C. C. HUDSON ET AL. V. SAN ANTONIO INDEPENDENT SCHOOL DISTRICT.

No. 7112. Decided June 17, 1936.
(95 S. W., 2d Series, 673.)

*Boyle, Wheeler, Gresham & Terrell* and *H. M. Parker*, all of San Antonio, for plaintiffs in error.

There being no evidence that the voters did not rely upon the resolution in controversy, the San Antonio Board of Education became bound to expend the money as provided for in such resolution, and it was error for the Court of Civil Appeals to reverse the judgment of the trial court granting a temporary injunction protecting the contractural relation and subject matter from being dissipated and diverted to other purposes. It was in the sound discretion of the court to grant such writ and there is nothing in the record to show that the

court abused such discretion. Fletcher v. Howard, 120 Texas, 298, 40 S. W. (2d) 52; Warren v. Sanger Ind. Sch. Dist., 116 Texas, 183, 285 S. W., 159; Harding v. Pearson (Com. App.), 48 S. W. (2d) 964; Pearce v. Atlantic Life Ins. Co., 36 S. W. (2d) 553.

*Hicks, Dickson, Bobbitt & Lange,* of San Antonio, for defendant in error.

On the question of the action of the board being a fraud upon the voters. Grayson County v. Harrell, 202 S. W., 160; Tyree v. Road District, 199 S. W., 644; City of Austin v. Nalle, 85 Texas, 522, 20 S. W., 671.

*B. W. Teagerden,* of San Antonio, filed brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

This suit was instituted in the District Court of Bexar County, Texas, by C. C. Hudson et al., seeking a temporary injunction, and on final hearing a permanent injunction, against the San Antonio Independent School District and its board of trustees, restraining them from spending a certain remaining portion of the proceeds derived from the sale of certain bonds of such district for any purpose other than the construction of a senior high school building on a site located near Aster and South Pine streets, within the district. The district comprises the same territory as does the City of San Antonio. The district court entered an order granting a temporary injunction. On appeal to the Court of Civil Appeals at San Antonio, this injunction was dissolved. 92 S. W. (2d) 528. Hudson et al. bring error.

The record before us shows the following pertinent facts:

(1) There was presented to the Board of Trustees of the San Antonio Independent School District a petition duly signed. This instrument petitioned the school board to issue the bonds of the school district in the sum of $1,750,000.00 "for the purpose of constructing, remodeling, equipping and repairing public free school buildings and the purchase of necessary sites therefor." Also, the instrument petitioned the board to order an election to determine if such bonds should be issued for the above purposes.

(2) On November 18, 1930, the board of trustees ordered the election above mentioned, to determine whether the above bonds should be issued. In this election order the purposes of the bond issue were stated in the same general terms as in the

petition. This order stated that the election would be held throughout the district on December 18, 1930.

(3) Notice of this election was duly published in the form and manner required by law. This notice stated the purposes of the bond issue in the same general language as the petition and order therefor.

(4) The election was duly held, and resulted in a majority for the issuance of the bonds. In this connection, it appears that there were 4,016 votes cast for the bonds, and 1,097 cast against them.

(5) On December 16, 1930, and less than two days before the above election was held, the board of trustees entered in its minutes an "official statement." In this "official statement" it was in substance recited that, if the above bond issue should carry, the board would use $750,000.00 of the proceeds thereof to build a new senior high school at Aster and South Pine streets. This "official statement" then recited that the balance of the bond issue would be used for numerous other named projects. It is not necessary to set out such other projects here.

(6) It appears that the above "official statement" was published as a news item the day before the election in two newspapers in the district. Also, it is shown to have come to the actual knowledge of a number of voters, and that they were perhaps influenced thereby. The number of voters who were shown to have had actual knowledge of the above "official statement" was insignificant when compared to the whole number of voters who voted at the election.

(7) The board has issued and sold the above bonds, and at the time this injunction was issued had already in effect expended all the proceeds thereof, except the sum of $469,-000.00. None of such funds have been expended for a high school building at Aster and Pine streets, and the board has decided to abandon such project. Also, the evidence is amply sufficient to show that conditions have so changed since these bonds were voted that it would not be a wise expenditure of public school funds to now build such building.

Under the above record, Hudson et al. contend that the board is bound to carry out the "official statement" above described, and to erect the high school building at Aster and Pine streets as therein provided for. This contention is based on the ruling of this Court in the case of Black v. Strength, 112 Texas, 188, 246 S. W., 79. In our opinion, the rules of law

announced in the case just cited will not support this contention.

In the Black case, supra, the opinion shows that the commissioners' court ordered an election to determine whether or not the bonds of the county should be issued for the purpose of constructing and maintaining certain kinds of roads throughout the county. No certain roads were designated in this order. Notice was given of such election by publication of the election order. Five days before the election was held, the commissioners' court entered another order pertaining to such proposed bond issue, whereby it in effect pledged and represented to the voters of the county that, in the event the bond issue should carry, the proceeds would be used to improve certain named roads. We interpret the opinion to then show that the voters of the county authorized such bonds to be issued in reliance on the subsequent order above mentioned. Under such a record, this Court held that the subsequent order could not be "arbitrarily ignored or repudiated without involving the perpetration of a fraud or its equivalent on the voters."

In the case at bar the facts differ very materially from those in the Black case, supra. Here, as in the Black case, the election order and notice were in general terms, in that no particular projects were designated. In this regard the voters, from the order and the notice, will be presumed to have understood that in case they authorized the bonds, the board would be left free to exercise its sound judgment and discretion in expending the funds so derived on such legitimate projects as in the opinion of the board would be to the best interest of the school system of the school district. The subsequent order, which had the effect to represent and pledge to the voters that the judgment and discretion of the board had already been exercised by naming or designating the particular projects to which the proceeds of these bonds would be appropriated, was not entered until less than two full days before the date of the election; and the Court of Civil Appeals in effect holds that the facts are utterly insufficient to show that the voters generally had notice thereof, or acted thereon in voting to authorize the issuance of these bonds. Under such a record, it would amount to the perpetration of a fraud on the voters of the school district generaly to enforce the subsequent order.

It will be noted that the opinion in the Black case does not hold absolutely that in all instances where the voters have voted bonds, relying on a subsequent order pledging that the proceeds would be used on a certain project or projects, the

governing board must carry out the order or pledge, regardless of consequences or changed conditions. It merely holds that the governing body must not *"arbitrarily ignore or repudiate"* such order or pledge. In the case at bar it is shown that these bonds were not realized on until years after they were voted. It is further shown by the record that the conditions have so materially changed since the bonds were voted that the building of the high school building here involved would be an unwise and unnecessary expenditure of public school funds. Such a record does not show that the board acted arbitrarily in abandoning the project.

Finally, the undisputed record shows that at the time this case was tried in the district court, the fund derived from the proceeds of these bonds had already been appropriated, so that only $469,000.00 thereof was left. It thus appears that the contended-for project cannot now be substantially carried out from the remaining proceeds of this bond issue. A $750,000.00 building cannot be erected with $469,000.00.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 17, 1936.