LAWLER et al. v. CASTROVILLE RURAL
HIGH SCHOOL DIST. et al.

No. 12195.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 20, 1950.

Rehearing Denied Nov. 15, 1950.

614

Joe Briscoe, Devine, George A. Wiggin, William E. Remy, San Antonio, for appellants.

Morriss, Morriss, Boatwright & Lewis, San Antonio, for appellees.

NORVELL, Justice.

This lawsuit grew out of a dispute over the location of a high school building of the Castroville Rural High School District. One of the proposed sites is the Jungman-Bader Tract, which lies within the city limits of the City of Castroville and on the west side of the Medina River. The other site is the Karm Tract, located on U. S. Highway No. 90, on the east side of the Medina River, across from the City of Castroville. In the findings and decision of the State Superintendent of Public Instruction, hereinafter mentioned, the two proposed locations are referred to as the Castroville site and the Highway 90 site, respectively, and such designations will be followed here.

The sufficiency of appellants' petition to support the injunctive relief prayed for is the matter specifically at issue. Two questions are involved. One relates to the legal effect and bindingness of a decision of the Superintendent of Public Instruction, approved by the State Board of Education, and the other relates to the authority of appellants as taxpayers and school patrons to maintain a suit of this nature.

The trial court dismissed the suit after sustaining a plea in abatement and several special exceptions.

We make the following statement from the allegations of the petition:

By an election held on August 27, 1949, the trustees of the Castroville Rural High School District were authorized to issue $110,000 in bonds "for the purpose of constructing, repairing and equipping public free school buildings of material other than wood in said District, and for the purchase of the necessary sites therefor."

Acting in accordance with said authorization, the Board of Trustees purchased the Jungman-Bader tract of land situated within the City of Castroville, Texas, and contracted with an architect for plans, specifications and supervision of the construction of a building upon said site. The trustees also contracted with N. H. Ryland for the construction of a building in accordance with the adopted plans and specifications. Construction of the building was begun and large quantities of building materials were purchased and delivered and a great amount of labor performed in connection with the construction of said building.

Certain residents of the school district, including a minority faction of the Board of Trustees, appealed from the action of said Board in selecting the Castroville site. The County Superintendent of Schools affirmed the decision of the local Board of Trustees, and an appeal was then taken to the County Board of School Trustees of Medina County, which board was vested with the jurisdiction over said Castroville Rural High School District. The County Board reversed the decision of the County School Superintendent and an appeal was then taken to the State Superintendent of Public Instruction, who, on the 23d day of February, 1950, reversed the decision and findings of the County Board of Trustees of Medina County and sustained and affirmed the findings, actions and rulings

of the Board of Trustees of the Rural High School District and County Superintendent of Medina County. This action was subsequently affirmed and approved by the State Board of Education. No appeal was taken from this order and no suit was filed in a district court to set aside the action of the State Board of Education.

On April 1, 1950, an election was held in said Castroville Rural High School District which resulted in a change of the personnel of the Board of Trustees. The group which favored the location of the new high school building upon the Highway 90 site succeeded in electing a majority of the members of the Board of Trustees. The majority of the said Board as presently constituted stated that they would not complete the school building which had been started in Castroville, and on May 29, 1950, authorized the President of the Board to purchase a tract of land lying outside of Castroville on U. S. Highway No. 90. The President thereupon entered into a contract of purchase with Oscar Karm and wife, Enna Karm. The petition alleged that, "the said Karm land, which is covered by the above mentioned executory contract signed by the President of said School Board, is a part and parcel of the same tract of land that was heretofore condemned after an inspection by the State Superintendent of Public Schools and the State Board of Education, and in fact said land is within two hundred and fifty yards of the identical land so condemned. The proceeding on the part of the defendants is a direct attempt to violate the rulings of said Board of Education."

Appellants also pleaded that the proposed purchase of the Highway 90 tract of land and the erection of a building thereon would result in an unlawful expenditure of the taxpayers' money.

The ruling of the State Superintendent of Public Instruction, dated February 23, 1950, is set out as an exhibit to the petition. Fourteen findings of fact are included therein, followed by one paragraph in the nature of a conclusion of law which is referred to as the "Decision." The parties are in dispute as to the proper construction of this "decision" and it is therefore necessary to examine it in some detail.

The State Superintendent stated in his findings of fact that the greater number of scholastics lived within the corporate limits of Castroville, on the west side of the Medina River and closer to the Jungman-Bader site, which had been selected and purchased by the Board of Trustees, than they did to the Karm site, located across the river on Highway 90; that the Castroville site was nearer to the geographic center of the district than the Highway 90 site; that while city water was available on the Castroville site, there was no water available on the Highway 90 site; that the cost of drilling a well on the latter site would be expensive; that there was a good foundation at ten feet on the Castroville site and that no foundation was found on the Highway 90 site at the depth of twenty feet, and consequently it would be more expensive to erect a building on the Karm site; that the Castroville site is not within an unhealthful area and the elevation thereof is higher than that of most of the public buildings and public property in Castroville; that there is no substantial likelihood of a flooding of the Castroville site, as the elevation of the tract was ten to fifteen feet above the highest known flood stage of the Medina River; that the Castroville site had been purchased and paid for; that the Board of Trustees in purchasing said tract had not acted arbitrarily, but acted honestly and in a manner which was for the best interest of the school children; that plans had been drawn for the building to be located on the Castroville site and could not be used without substantial changes in erecting a building on a different site; that there would be some danger to the lives of the children if the school were located on the east side of the river, because those living in Castroville would have to cross the highway bridge over the Medina River unless they were transported across the bridge by bus, which action would not be economically feasible; that it would be inconvenient

for the Castroville children to stay at school during the lunch hours; that if the school were located in Castroville, on the west side of the river, said children could conveniently go home for lunch, and that the children living in Castroville constitute the great majority of the children living in the Castroville Rural High School District.

Based upon these findings, the State Superintendent rendered his decision that the Castroville site purchased by the Board of Trustees was a satisfactory site for the location of a high school. The Superintendent thereupon reversed the decision and findings of the County Board of Trustees of Medina County and sustained the findings and rulings of the Board of Trustees of the Castroville Rural Independent School District and the County Superintendent of Medina County.

In ascertaining the extent and scope of the "decision" of the State Superintendent, it is necessary to construe the same in the light of the findings of fact. When this is done it seems clear that the matter before the Board of Trustees of the Castroville Rural High School District, prior to the rendition of their order selecting the Castroville site, was whether the proposed new high school building should be located in the City of Castroville on the west side of the Medina River, or outside of the City and across the river on Highway 90. The original decision of the local board was sustained and affirmed by the State Superintendent of Education and the State Board of Education. It thereupon became the decision of the State Board of Education, the highest authority under the school administrative organization. (The transactions here involved took place prior to the effective date of the 1949 School Administration, Acts, 1949, 51st Leg. p. 537, ch. 299, Articles 2654—1 to 2654—7, inclusive, Vernon's Ann.Civ.Stats., which abolished the office of State Superintendent of Public Instruction and transferred the power and duties thereof to the State Commissioner of Education.)

The decision of the State Board of Education upon the matter at issue was not subject to being countermanded or set aside by a subsequent order of the local board of trustees. Under certain circumstances, a material change of conditions, such as the destruction of a proposed site, or a substantial shift in population, or some major alteration similar thereto, might authorize a local board to designate another site after action had been taken by the State Board. Under these circumstances the order would be a new one dealing with a different matter from that passed upon by the State Board. Such extraordinary conditions are not disclosed by the allegations of the petition in this case, but, on the contrary, it appears that the second order of the local board seeking to adopt the Highway 90 site is contrary to the prior order of the State Superintendent and the State Board of Education upon the identical issue and is consequently invalid. It is well settled that in the absence of an appeal to the judiciary and a showing of an abuse of discretion on the part of the State Superintendent and the State Board, the decision of the superior administrative authority must be followed. Article 2656, Vernon's Ann.Civ.Stats.; State ex rel. Marrs v. Abshier, Tex.Com.App., 263 S.W. 263; Bevers v. Winfrey, Tex.Civ.App., 260 S.W. 267; Gragg v. Hill, Tex.Civ.App., 58 S.W. 2d 150, wr. ref.; 37 Tex.Jur., 925–928, §§ 58–60.

We also hold that the appellants as taxpayers and school patrons of the Castroville Rural High School District are authorized to maintain a suit of this nature which, under the allegations of the petition, has for its purpose the preventing of the expenditure of public funds for a school building upon a site which has not been legally selected for that purpose. Bevers v. Winfrey, supra; Seat v. Jones, Tex.Civ. App., 225 S.W. 208. In Noguess v. Peveto, Tex.Civ.App., 297 S.W. 1100, the specific issue here involved seems to have been passed upon adversely to appellees' contention. Prior to the adoption of the 1941 rules of civil procedure, the question of the authority of taxpayers and school patrons to maintain a suit of this nature presented a matter of fundamental error. See Ram-

sey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979.

The order of the trial court is reversed and the cause remanded for reinstatement upon the docket and further proceedings not inconsistent with this opinion.

Reversed and remanded.

### On Motion for Rehearing.

█ The hearing below was upon exceptions and a plea in abatement in the nature of an exception, in that it was based on matters appearing in the petition. The trial court was of the opinion that for reasons set forth in the exceptions and the plea in abatement, the petition stated no basis for the granting of the relief sought by appellants and accordingly dismissed the suit. Upon review we necessarily accepted the allegations of the petition as true. See, Article on Pleading, 8 Tex.Jur., 10 year Supp., 200, §§ 139, 140 and 141. We make this statement in deference to appellees' request that the original opinion be clarified in this particular. No disputed fact issues are involved upon this appeal.

In Noguess v. Peveto, Tex.Civ.App., 297 S.W. 1100, 1101, it is said that: "Appellants have filed no brief in this cause challenging the judgment appealed from on any ground, and, so far as we have been able to discover, there is no fundamental error apparent upon the face of the record for which we would be authorized to reverse this judgment. It has therefore been ordered that the judgment be affirmed."

The opinion specifically states that the record was examined for fundamental error. The court necessarily passed upon the authority of citizens and taxpayers to maintain the suit as this was a matter apparent upon the face of the pleadings. The case of Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, contains a discussion of the difference between the concept of "fundamental error" before and after the adoption of the 1941 Rules of Civil Procedure.

We adhere to the views set forth in our original opinion and appellants' motion for rehearing is overruled.