Charles V. BLANTON et al., Appellants,

v.

CITY OF HOUSTON, Texas, Appellee.

No. 13808.

Court of Civil Appeals of Texas.

Houston.

Oct. 19, 1961.

Rehearing Denied Nov. 16, 1961.

Cyril J. Smith, J. Edwin Smith, Frank O. Barnes, Houston, for appellants, Smith & Lehmann, Croom & Barnes, Houston, of counsel.

R. H. Burks, City Atty., John Gano, Sr., Asst. City Atty., Charles F. Weaver, Asst. City Atty., Houston, for appellee.

Will Wilson, Atty. Gen., Howard W. Mays, Asst. Atty. Gen., Gibson, Spence & Gibson, Robert W. Spence, Austin, amici curiae.

COLEMAN, Justice.

This is an appeal from a judgment of the trial court rendering a declaratory judgment, and refusing relief by way of mandamus and injunction. All parties appearing in the trial court have properly perfected an appeal to this Court.

Appellants are the owners of certain lots located in the Sharpstown Country Club Terrace, a subdivision located within the former area of Harris County Water Control and Improvement District No. 24. The territory comprising this district was annexed by the City of Houston by Ordinance finally passed and approved on December 31, 1956, and was taken over by the City

on February 20, 1957, as provided by Article 1182c–1, Vernon's Ann.Revised Civil Statutes of Texas. Prior to the annexation an election had been duly called and held within the District which resulted in the authorization of the issuance by the District of bonds in the amount of $5,600,000 "for the purpose of purchasing and constructing extensions and additions to the District's water and sanitary sewer system, and for the further purpose of purchasing and constructing extensions and additions to the District's drainage system for the drainage of lands within said District." The District had previously issued bonds which were sold as the need arose pursuant to orders for sale passed by governing board of the District. At the time the District was annexed by the City, the District had $4,850,000 in bonds which had not been sold. On February 2, 1957, the District entered an order for the sale of the remaining bonds. Prior to the date on which the District was taken over by the City, the District secured the necessary approval for the sale of the bonds and entered into an agreement for their sale on certain conditions and the bond buyers put the purchase money in escrow pursuant to the agreement. After the District was taken over and certain litigation over the legality of the City's Annexation Ordinance was concluded, the money derived from the sale of the bonds was delivered to and accepted by the City.

On September 14, 1960, at a time when $4,287,000 of the money remained in the hands of the City, Ordinance No. 60–1222 was passed. This ordinance contained findings that changes in conditions and circumstances over the years have resulted in the necessity for abandonment of the "original particular purposes for which such bonds were voted," and declared such purposes abandoned. It further specified that an election would be called under the terms of Art. 703b, V.A.T.S., at which the proposition would be submitted to the voters of the entire City as to whether or not the funds remaining should be spent for other

and different purposes. Immediately after this ordinance was passed on first reading, and prior to final enactment, this suit was filed.

After the trial court had rendered his judgment on the 16th day of May, 1961, Ordinance No. 61–849 was finally passed and approved. This ordinance established a general policy applicable to the constructing, extension and connection to water, sanitary sewer and drainage facilities within the geographic boundaries of all reclamation districts formed under Section 59 of Article XVI of the Constitution of Texas, Vernon's Ann.St., heretofore or hereafter annexed by the City, where such district at the time of the proposed development as a subdivision had funds in its construction fund account available for construction purposes. The ordinance provided that any person desiring to have water, sewer or drainage facilities constructed on land owned by him in such former district, which he proposed to develop as a subdivision, should make application to the City on forms to be provided, furnish necessary plans, maps and information and sign an agreement that the connection charges provided in the ordinance should constitute a lien on his land. It further provided that thereafter "in the event the City Council approves the proposed project" and finds that funds are available, the project should be duly advertised and upon the acceptance of a bid by the City Council, "the necessary ordinance will be passed awarding the contract to the successful bidder and appropriating the necessary funds therefor from the District's Construction Fund Account * * *" Section 4 of the ordinance provides:

"No person shall have or acquire any vested right under the provisions hereof to have constructed at the expense of the City laterals to serve land of a proposed subdivision. Whether or not City will bear the initial expense of constructing laterals under the provisions hereof shall be a matter completely within the discretion of City Council and its decision on any such matters shall be final."

Section 9 provides that "all ordinances or parts of ordinances in conflict herewith are specifically repealed to the extent of such conflict only."

The City now contends that this ordinance repealed Ordinance No. 60–1222. The City further made known to the court that contracts had been let and construction begun on projects which would furnish water, sewer and drainage facilities to approximately one-half of the lots appellants contend they own. The City takes the position that by reason of Ordinance No. 61–849, which they contend repealed Ordinance 60–1222 and established policy with reference to the construction of water, sewer and drainage facilities, together with the fact that contracts for construction have been let and work begun in the District, renders the issues presented by appellants on this appeal moot.

We do not agree. While it may well be true that as a matter of fact the City has abandoned its expressed intention to hold an election under the provisions of Art. 703b, supra, it still contends that Ordinance No. 60–1222 was and is valid and that this Court, in the event it finds that the case is not moot, should reverse the action of the trial court in holding the ordinance invalid. The City in its briefs and argument maintains its right to proceed under the provisions of Art. 703b, supra, though it contends that Ordinance No. 61–849 constitutes a disavowal of its intention to do so.

While Ordinance No. 61–849 is an expression of City policy, it does not bind the City to spend all or any part of the bond funds in question within the geographic boundaries of the District even though the application submitted meets the specific conditions set out in the ordinance. The City has not irrevocably committed itself to furnish water, sewer and drainage facilities to all of the lots owned by appellants.

The policy of the City in this respect could be changed at any time by action of the City Council. The provisions of Ordinance No. 61–849 are not so inconsistent with the provisions of Ordinance No. 60–1222 as to effect its repeal in toto. It is not necessary to determine what provisions, if any, are repealed. The suit is not rendered moot by reason of Ordinance No. 61–849. Sterrett v. Bell, Tex.Civ.App., 240 S.W.2d 516.

The City further contends that appellants had no justiciable interest in the subject matter of the suit and that no justiciable controversy existed between appellants and the City. Ordinance No. 60–1222, in addition to finding as a fact that the purposes for which the District's bonds were voted had been abandoned and had been accomplished by other means, expressly declared the abandonment of such purposes by the City and expressly declared the intention of the City to call an election under Art. 703b, Vernon's Ann.Civ.St., for authorization to expend the balance of the bond proceeds for other and different purposes. Appellants are all engaged in the business of building residential housing. They are the owners of 522 platted lots within the bounds of the former District, which, at the time this suit was filed, were not served with water and sewer facilities. They were property taxpayers of the former District, as well as owners of property needing the facilities included within the purposes of the bond issue.

■ By reason of the provisions of Article 16, Sec. 59(c), The Constitution of Texas, and Article 7880–6, R.C.S. Texas, the bonded indebtedness of the District, and taxes levied to pay same, constitute a lien on property situated in the District subject to assessment for taxes. Art. 7880–6, supra, and the bond orders authorizing the issuance of the bonds, pledge the net revenues from the operation of the waterworks and sanitary sewer systems to the payment of the indebtedness, as well as providing that the bonds shall be payable from the proceeds of an ad valorem tax to be levied upon all taxable property subject to taxation within the District without limitation as to rate or amount. The fact that the District has been annexed by the City will not prevent the enforcement of the constitutional or statutory liens should such enforcement become necessary to pay the interest and maturities of the outstanding bonds. City of Decatur v. Thames Bank and Trust Co., C.C.A., Ala., 84 F.2d 105; 43 Amer.Jur., Public Securities and Obligations, §§ 273, 274. Since the tax rate which the City might be forced to levy on property in the City generally is limited, while that which might be levied on property within the former boundaries of the District is not limited, property owners within those boundaries have an interest in the development of the entire area of the District not shared by property owners in other parts of the City. A justiciable controversy arises between such property owners and the City when the City threatens to abandon the extension of water and sewer lines necessary to the development of the District as an urban area or to divert bond funds voted for the purpose of such development to other areas of the City. Black v. Strength, 112 Tex. 188, 246 S.W. 79; Moore v. Coffman, 109 Tex. 93, 200 S.W. 374; 43 Amer.Jur., Public Securities and Obligations, § 47.

■ In Lewis v. City of Fort Worth, 126 Tex. 458, 89 S.W.2d 975, 978, the court stated: "It is elementary that the proceeds of bonds voted by the people must be expended for the purposes for which they were voted." This statement was quoted with approval in Gillham v. City of Dallas, 207 S.W.2d 978, Tex.Civ.App., and in Clark v. Greer, 232 S.W.2d 876, Tex.Civ.App. It is the rule in Texas that where specific projects to be constructed from the proceeds of a proposed bond election are designated in pre-election orders, such orders become a part of the proposition voted and control more general language found in the orders or ordinances calling the election. Black v. Strength, 112 Tex. 188, 246 S.W.

79; Gordon v. Commissioners' Court of Jefferson County, 310 S.W.2d 761, Tex.Civ. App., ref., n. r. e.; Wright v. Allen, 257 S.W. 980 Tex.Civ.App., writ ref. Art. 7880–78 provides that before a District may hold an election for the issuance of bonds, plans and specifications for the improvements to be constructed with the proceeds shall be filed in the office of the District and open to inspection by the public. The bond order, pursuant to which the election authorizing the bonds in question was held, recited that a complete engineer's report covering the extensions, additions and improvements to be constructed, together with maps, plats, profiles, and date explaining same, were filed in the District's office for inspection by the public. The bonds were authorized by the voters for specific projects in a specific area and the proceeds cannot be diverted for use on different projects in different areas.

■ The City contends that the purposes for which the bonds were issued have been officially abandoned by City ordinance and have been abandoned in fact, and that the purposes have been accomplished by other means. Ordinance No. 60–1222 so finds and provides. Therefore, the City reasons, it is authorized by the provisions of Art. 703b, Vernon's Ann.Civ.St., to call an election in which the qualified voters of the entire City can authorize the expenditure of the balance of these bond funds on other projects.

Art. 703b, Vernon's Ann.Civ.St., reads as follows:

"This Act shall apply to all cities, including but not limited to, home rule cities, which have sold and delivered bonds for a specific purpose or purposes and such purpose or purposes have been accomplished by other means or have been abandoned and all or a portion of such bond proceeds remain unexpended. In such cases, the governing body of each such city shall be authorized to call and hold an election, in the same manner provided for call-ing and holding bond elections, for the purpose of submitting to the duly qualified resident electors of such city who own taxable property within said city and who have duly rendered the same for taxation the proposition of whether or not such unexpended funds may be expended for other and different purposes specified in the election resolution or ordinance and the election notice. If a majority of those voting at such election vote in favor of the use of such unexpended funds for such designated purpose or purposes, then the governing body of such city shall be authorized to make such expenditures."

Since the statute authorizes such an election to be held by a city only when it has *sold* and *delivered* bonds, the election contemplated would not be authorized under its terms merely by reason of the fact that the City, by annexing the District, assumed payment of the bonds and received the proceeds of the sale. The evidence establishes that the bonds were issued by the District and sold, prior to its dissolution, subject to an escrow agreement which provided, in effect, that the purchaser could rescind unless it received an unqualified approving opinion from acceptable bond attorneys as to the legality of the bonds. This opinion was not received until after the dissolution of the District. On the 17th day of September, 1958, the City Comptroller was authorized by motion to receive for the City the "$4,850,000.00 tendered by the purchasers and present owners of Water Control and Improvement District No. 24 bonds in that amount and that he is hereby authorized to service the debt and honor the coupons." The funds were paid to the City by the bank which was the depositary for the District. The marketing opinion was secured by the City and furnished by it to the purchasers from the District. By so doing the City elected to honor the contract of sale, entered into by the District, as it was authorized to do by statute. Art. 1182c–1, V.A.T.S. The record in this case does not

show a sale of these bonds *by the City*. The City did not undertake to sell these bonds in the manner provided by Art. 1182c–4, V.A.T.S., which authorizes cities of over 500,000 population to issue and sell bonds *of said city* in an amount not exceeding the amount of voted but unissued District bonds by ordinance of the governing body of such city. The bonds sold do not purport to be bonds of the City of Houston. The record contains no ordinance authorizing the sale of these bonds by the City. These bonds were not sold and delivered by the City. 43 Amer.Jur., Public Securities and Obligations, § 122. The trial court erred in holding that Art. 703b, Vernon's Ann.Civ. St., is applicable to bonds assumed by a city and to the proceeds of the sale of the bonds of former Harris County Water Control and Improvement District No. 24 in the event the purposes for which they were voted should in fact be abandoned or accomplished by other means.

That portion of the judgment holding Ordinance No. 60–1222 void is attacked by the City. The ordinance contains a severability clause. Construing the ordinance together with the provisions of Art. 703b, Vernon's Ann.Civ.St., referred to therein, it is obvious that it was enacted as a predicate for an election under the terms of that statute. We recognize the general rule that the courts will not interfere in political matters by preventing or enjoining elections. However, the record does not show that the ordinance in question is an indispensable step in the process of calling and conducting such an election. Since the money derived from the sale of these bonds must be spent for the purposes for which they were voted, it follows that such purposes may not be abandoned by the City. The net revenues from the project for which the bonds were voted are pledged for payment of the bonds, therefore the amount of such revenue would affect the amount of taxes to be levied on property owners. Appellants have a justiciable interest in preventing the abandonment of the purposes for which the bonds were issued. The evi-dence is undisputed that large areas within the former boundaries of the District had not been furnished water and sewage facilities. The finding in the ordinance that the purposes for which the bonds were voted had been accomplished by other means was contrary to undisputed physical facts and, therefore, arbitrary. Even though the City has provided a plan by which water, sewage disposal and drainage might be provided in the future, the purpose of providing such facilities cannot be considered accomplished until they are available for use. Since the declaration of abandonment contained in the ordinance is beyond the power of the City, and findings of fact contained therein are arbitrary, in view of the purpose of the ordinance, we conclude that the severability clause is ineffective and the ordinance as a whole void.

Appellants complain of the action of the trial court in refusing to issue a writ of mandamus directing and requiring the City, with due and reasonable dispatch, to expend so much of the bond proceeds as are proper and necessary to give adequate water, sewer and drainage service *to the property of appellants*.

"Mandamus lies to enforce the performance of a nondiscretionary act or duty. The writ will issue only when the act or duty is ministerial in character, and it is not available to control or review the action of an official or board upon matters involving the exercise of discretion or judgment." 28 Tex.Jur., Mandamus, § 13.

" * * * a mandamus will lie to correct a gross abuse of discretion upon the part of boards or officers intrusted with such discretion, when such abuse is so clearly shown as to establish the fact that in performing the act complained of the officers acted wholly through fraud, caprice, or by a purely arbitrary decision, and without reason." King v. Guerra, 1 S.W.2d 373, 376, Tex.Civ.App., writ ref.

"This being a mandamus proceeding, the burden rested upon the party seeking that extraordinary relief to negative, by affirmative allegation and proof, every fact or condition which would have authorized the action of the board of commissioners in refusing to take the action now sought to be forced upon them." King v. Guerra (on motion for rehearing), supra.

It should be noted that petitioners are not seeking by mandamus to require the City to prepare plans for and to construct improvements in the entire area of the dissolved district, nor do petitioners show that the proceeds of the bond issue in the hands of the City are sufficient to complete the projects contemplated when the bond election was held. These bonds were voted for the purpose of purchasing and constructing extensions and additions to the District's water and sanitary sewer system and drainage system. In view of the length on time which elapsed between the election and the filing of this suit, it is quite possible that the money available for the improvements would not be sufficient for all of the additions and extensions contemplated. In this event, the City would have to determine the proportionate part of the money to be spent on each of the needed projects, as well as to determine which projects to eliminate or what modifications in the plans might be required. The evidence shows certain changes in the use of lands within the District from that contemplated at the time of the election, as well as other changed conditions, which might require the City, in the exercise of sound discretion, to make changes in the plans contemplated at the time of the election. Hudson et al. v. San Antonio Independent School District, 127 Tex. 517, 95 S.W.2d 673. The evidence shows that some funds have been expended and that certain plans for future improvements have been prepared. The trial court correctly ruled that the mandamus prayed for should not issue. Lewis v. City of Fort Worth, 126 Tex. 458, 89 S.W.2d 975, Tex.S.Ct.;

City of Beaumont v. Matthew Cartwright Land and Improvement Co., 224 S.W. 589, Tex.Civ.App., writ ref.; Gillham v. City of Dallas, 207 S.W.2d 978, Tex.Civ.App., writ ref., n. r. e.

While the trial court held that the City could legally require property owners to contribute to the cost of the installation of water and sewage facilities, this holding is not necessary to a proper disposition of this suit and was not among the issues pled in the declaratory judgment action. In view of the fact that the particular requirement developed at the trial has been abandoned by the City by Ordinance No. 61–849, we do not pass upon its validity. The two ordinances in question are substantially different and the validity of the present ordinance would not necessarily be governed by a decision on the former one.

Appellants have complained of that part of the trial court's judgment wherein he declared that the failure of the City to authorize the use of the unexpended bond funds for the voted purposes did not constitute an abuse of discretion or a gross abuse of discretion, and is not capricious, arbitrary, unreasonable or discriminatory. The record does not establish arbitrary action or abuse of discretion on the part of the City as a matter of law. Evidence was produced supporting the finding made by the court. Appellants did not request that an issue be submitted to the jury. The court expressly based this finding on the fact that none of appellants had made application to any officer of the City for the expenditure of such funds. Since this finding is supported by other evidence, it is not necessary to determine whether the failure to make application would be a sufficient basis for the court's finding. There are large areas of vacant land which have no present need for water and sewage facilities. The evidence does not compel the conclusion that the installation of such facilities would substantially hasten the development of the entire area. Art. 7880–

84a(2), V.A.T.S., permits such districts to issue bonds in parcels "as the needs of the district may require." The timing of the installation of these facilities is a matter of discretion and, in view of the fact that there is evidence to support the action of the City, no abuse of discretion is shown. King v. Guerra, supra.

The Points of Error brought to our attention are numerous and lengthy. They have been carefully considered and, except as herein stated, are denied.

The trial court has included in his judgment certain findings of fact and declarations of law which are not necessary to the decision of any justiciable issue presented by the pleadings and evidence in this case. These may be found in paragraphs numbered 2, 10, 11 and 12 of such judgment. In reforming the judgment of the trial court such paragraphs will be eliminated, and the judgment will be reformed in other respects to make it conform to the opinion of this Court.

The judgment of the trial court will be reformed and, as reformed, affirmed.