**Russell DEVORSKY, Appellant,**

v.

**LA VEGA INDEPENDENT SCHOOL DISTRICT, et al., Appellees.**

**No. 10–82–058–CV.**

Court of Appeals of Texas, Waco.

June 24, 1982.

W. V. Dunnam, Jr., Dunnam, Dunnam, Horner & Meyer, Waco, for appellant.

Tommy P. Herring, McClintock, Herring & Youts, Waco, for appellees.

HALL, Justice.

On November 17, 1981, the Board of Trustees of La Vega Independent School District by resolution ordered an election to be held on December 15, 1981, on this proposition: "Shall [the Board] be authorized and empowered to issue the bonds of said District to the amount of $5,000,000.00 for school building purposes, to wit, the construction and equipment of school buildings in the District and the purchase of the necessary sites therefor, and shall there be pledged and levied, assessed and collected annually ad valorem taxes on all taxable property in the district sufficient, without limit as to rate or amount, to pay the principal of and interest on said bonds as the

same become due, said bonds to be issued in one or more series or issues, to mature serially or otherwise not more than FORTY (40) years from their date, and to bear interest at such rate or rates (not to exceed the maximum rate permitted by law at the time of issuance of the bonds) as in its discretion the Board of Trustees shall determine?" The election was held on the appointed date, and the proposition carried.

On March 25, 1982, appellant Russell Devorsky filed this suit against appellees the School District and its Board of Trustees to enjoin appellees from issuing or selling any of the bonds authorized by the bond election and from assessing, levying, or collecting any taxes for the purpose of paying any principal or interest on the bonds. After pleading the resolution and order calling the election, including the purpose of the bond issue set forth in the order, appellant alleged the following:

"Said election was held in pursuance of said order on said 15th day of December, 1981, and by the vote of 649 for to 629 against, the proposition to authorize and empower said Board to issue said bonds and levy, assess, and collect said taxes carried. After said Board's adoption of said resolution and order on November 17, 1981, and prior to said election said Independent School District, acting through its duly authorized agents within the scope of their authority as such, expressly represented to all qualified voters in said School District that the site to be purchased upon which said school buildings would be constructed would be on Loop 340 east of the American Bank, that the school buildings to be constructed would be highly visible to the public approaching Bellmead from the north and northwest, and that by reason of said high visibility to highway traffic on Interstate Highway 35 and Highway Loop 340 said school would be an asset to the City of Bellmead and its citizens and that it would be an asset to the areas surrounding said location which would include a great portion of the residential and business properties in the City of Bellmead. Each of said representations

was material to each of said voters in said School District and in particular those living within the City of Bellmead, was a material cause and inducement of and for more than twenty qualified voters in said election voting for said proposal to empower and authorize said bond issue and taxes who would have voted against same if said representations or either of same had not been made. Since said election, in March of 1982 said School District abandoned and decided not to construct said school at or near said site which had been represented and brought about a favorable vote on said bond issue and publicly announced to all of the voters in March of 1982 that it would use said bond issue and the monies to be derived from the issuance and sale of said bonds toward the purchase of fifty acres of land from the Guy Combs estate located on the north side of Interstate Highway 84 East at the intersection of Highway 84 East and County Road 212, which location is far removed from the northern part of the City of Bellmead, the site represented to the voters prior to said election, and any school constructed thereon will not be highly visible from those approaching Bellmead from the north or northwest and said location will be continuously flown over by planes practicing landing and taking off at an airfield in that said location is within the approaches to the landing field of a busily used airfield and by reason of said location said school will not constitute any asset to the City of Bellmead or the areas surrounding said Loop 340 near said American Bank. Said Board of Trustees and said School District at all times knew that all of said qualified voters would rely on said representations prior to and at the time of the making of each of same and knew that each of said representations was material and would induce and was intended by said Board and School District to induce voters to vote in favor of said proposal instead of against same. The change made after said election by said Independent School District and its said Board of

Trustees is a material and substantial change of the purpose for which said bonds are to be used and sold and the proceeds therefrom expended. Such change is arbitrary and none of said bonds have been issued or sold and the site which said voters relied upon as represented by said Independent School District at the time of said election is presently obtainable and possible to be used in accordance with said representations.

"By reason of the above facts heretofore set out this Plaintiff, who is a duly qualified voter who voted in said election in reliance on each of said representations, and who is and at the time of said election was a taxpaying resident of said Independent School District and qualified voter therein, and said School District and each of the taxpayers and voters therein will suffer irreparable harm and injury for which they have no adequate remedy at law . . ."

Appellees responded with two pleas in abatement. In the first they alleged that the essence of appellant's suit is a contest of the bond election, and that since appellant had failed to meet the jurisdictional requirement for such contest prescribed in V.A.T.S. Election Code arts. 9.03 and 9.30 by failing to give notice of the contest to any officer of District within 30 days after the return day of the election and by failing to file this suit within such 30 days, the court was without jurisdiction in the case. Appellees prayed for dismissal of the suit "for want of jurisdiction." In the second plea in abatement, appellees alleged that appellant "has not the legal capacity to sue," and that he "is not entitled to the relief sought in his Petition in the capacity in which he sues." This plea in abatement did not include a plea or prayer for the relief sought.

The record does not reflect any special exceptions to any pleading filed by the parties.

After a hearing on April 2, 1982, both pleas in abatement were sustained and separate orders were rendered on each plea dismissing appellant's suit. In the judgment on the first plea in abatement the court expressly concluded that it "does not have jurisdiction over the subject matter of this suit" and upon that ground dismissed the suit "for want of jurisdiction." The judgment on the second plea in abatement recited the court's conclusion that appellant "does not have the legal capacity to sue in the capacity in which he sues," and it ordered the suit dismissed on that ground. Appellant brought this appeal on both orders contending that this is a suit to enjoin the illegal diversion of public funds and that he has legal standing to bring it. We reverse the judgments and remand the case for trial.

The evidence on the pleas in abatement was stipulated by the parties. It included the order calling the bond election, the published notice of the election, and the ballot. The order, as shown above, and also the notice and ballot were in general terms insofar as the location of the schools to be constructed with the bond revenues was concerned, and no specific site was designated. Appellant's petition was also stipulated into the record.

■ It is the rule that where the voters have voted bonds relying on a prior order or pledge of the governing board that the proceeds would be used on a certain project "the governing body must not 'arbitrarily ignore or repudiate such order or pledge,' " *Hudson v. San Antonio Independent School District*, 127 Tex. 517, 95 S.W.2d 673, 675 (1936); and an injunction will lie to prevent the diversion and use of the proceeds to another project or purpose. *Black v. Strength*, 112 Tex. 188, 246 S.W. 79, 80 (1922); *Moore v. Coffman*, 109 Tex. 93, 96, 200 S.W. 374 (1918). This rule applies where the order or pledge of the governing body relates to a designated site or location of the project. *Hudson* and *Moore*, supra. In *Moore*, a specific site was designated in the order calling the bond election and the notice of it. In *Hudson*, the election order and notice for a bond election for school buildings and necessary sites were in general terms, but after the order and before the election the board of trustees entered in its

minutes an "official statement" that if the bond issue should carry a specified portion of the proceeds would be used to build a new high school at a designated location. In *Black* the bond election order of county commissioners for the purpose of constructing and maintaining roads "throughout the county" and the notice were also in general terms, but between the date of the order and the date of the election the commissioners adopted and entered on the minutes of the court an order that if the bond issue should carry certain specific roads would be improved.

In our case the order calling the election and the notice were in general terms not specifying a site for the school buildings to be constructed by the bond proceeds, and appellant did not allege or prove that after the order and prior to the election appellee Board of Trustees entered an "official statement" or order into its minutes designating the specific site for the school buildings now claimed by appellant if the bond election should carry. Nevertheless, appellant alleged that after the order and before the election appellees acting through their duly authorized agents expressly represented to the voters that the bond proceeds would be used to purchase a specifically designated site for the construction of the school buildings and that because of its location the use of this particular site for the school would be an asset to the surrounding residential and business properties, including a great portion of those properties in the City of Bellmead; that appellees knew that all of the voters would rely upon these representations, knew that the representations were material to the election, and knew and intended that the representations would induce voters to vote for rather than against the bond issue; that the bond election carried by 20 votes; that the representations were the material cause of and inducement for more than 20 votes for the bond issue by voters who would have voted against the proposal except for the representations; that in March, 1982 appellees arbitrarily abandoned the represented site and selected another site far removed from the represented site; that

the represented site relied upon by the voters at the time of the election is presently obtainable and usable for the school; and that none of the bonds have been issued or sold.

■ The effect of the order sustaining appellees' plea in abatement and dismissing appellant's suit on the ground that the court did not have jurisdiction over the subject matter of the suit is the equivalent to sustaining an exception to appellant's petition on the ground that it does not state a cause of action cognizable before the court, and under this circumstance we must assume that the facts alleged by appellant are true. *Morgan v. Petroleum Casualty Co.*, 40 S.W.2d 205, 206 (Tex.Civ.App.—San Antonio 1931, writ ref'd); *Lawler v. Castroville Rural High School Dist.*, 233 S.W.2d 613, 617 (Tex.Civ.App.—San Antonio 1950, writ ref'd); *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.). We believe that appellant's pleadings may be reasonably construed as alleging that after the election was ordered but before it was held appellees officially stated and pledged to the voters that if the bond issue carried the proceeds would be used to purchase a specific site for the school; that this official statement was intended by appellees to cause, and did cause, the bond election to carry; that thereafter appellees arbitrarily abandoned this pledged site and selected another, although it is still available for the proposed school; and that no bonds have issued.

■ The use of the bond proceeds to "purchase necessary sites" for the school buildings was a part of the proposal to the voters in the election order. It was within the power of appellee Board of Trustees to designate the site or sites. V.T.C.A., Education Code § 23.26. In *Moore v. Coffman*, supra, at 200 S.W. 375, our Supreme Court said:

"The specific use to which it is intended by the public officials that public moneys shall be applied is always of concern to those upon whom taxation rests the burden of the expenditures. In the matter

of bond issues authorized by the vote of the citizenship affected, in the submission of the proposition the law encourages, rather than frowns upon, a full and definite statement of their purpose. The location of an expensive public improvement dependent upon such bond issues is frequently of as prime importance as its construction. In such cases it is only fair to the voters in the election called to determine the matter to inform them in advance of the intended location, so that the actual merits of the given proposal, into which the question of location may largely enter, shall decide the contest. When this is done, the location is a part of the vote and is entitled to an equivalent protection."

If the allegations in appellant's petition are true, they establish that appellees intended that the voters in the election in our case should understand that the purpose of the bond issue included the purchase of the particular school site pleaded by appellant, and that the voters did so understand. ·

Although it is the general rule, relied upon by appellees, that a contract or agreement made by a public agency like appellee School District is valid and binding only when adopted by a resolution or order at a meeting of the governing body and entered in its minutes, we have found no authority expressly holding that a statement to the voters designating a particular site to be purchased with the proceeds of a bond issue, made by a governing body with the power of site selection, under the circumstances and for the deliberate purpose and the effect alleged here by appellant, must be adopted at a meeting entered in the minutes of the governing body before it can officially become and be relied upon by the voters as part of the proposition submitted in the bond proposal.

█ We hold that appellant pleaded a cause of action to enjoin the diversion of a bond issue voted by the public for a specific purpose, cognizable before the trial court.

The evidence on appellees' second plea in abatement, all by stipulation, is this: Appellant is a resident citizen in appellee School District, and he was at the time of the bond election in December, 1981. At the time of the election and presently he was and is the owner of an automobile kept at his residence, but he owns no other property. Appellant paid School District a tax on his automobile in 1981, but beginning January 1, 1982 School District discontinued its taxation of automobiles and it is not taxing automobiles under its present procedure.

█ Appellant alleged that he is a resident taxpayer and qualified voter in appellee School District. The undisputed evidence is that he is a resident citizen in the District, that he owns an automobile kept at his residence, that the District taxed the automobile in 1981 and the tax was paid, but that under the District's present tax program the automobile will not be taxed. The rule is settled in our State that a resident taxpayer in a governmental district is entitled to bring a suit to enjoin the public officials from expending public funds illegally. *Lawler v. Castroville Rural High School Dist.*, 233 S.W.2d 613, 616 (Tex.Civ. App.—San Antonio 1950, writ ref'd). Under our constitution and statutes, appellant's automobile is taxable by appellee School District for the purpose of raising revenue to pay the principal and interest on the forty-year bonds. Vernon's Tex.Const., art. 8, § 1; V.T.C.A., Tax Code § 11.25(c). The voted bond proposal in issue here provided that the bonds shall be paid for by "ad valorem taxes on all taxable property in the district." We hold appellant has the interest of a resident taxpayer sufficient to bring this suit even though his automobile was not assessed for taxes by District for 1982. Moreover, we believe and hold that under the decision of the U.S. Supreme Court in *Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), the undisputed fact that appellant is a resident citizen in the District entitles him to bring this suit.

Appellees assert the dismissal orders are supported by implied findings based upon evidence introduced at the hearing on appellant's plea for a temporary injunction, which was heard immediately following the

hearing on the pleas in abatement but before they were ruled upon. The record does not show that the injunction evidence was introduced upon the pleas in abatement, but even if it was properly before the court on the latter pleas it does not support the conclusion that appellant has not pleaded an action to prevent the alleged diversion of public funds or that he does not have standing to sue.

The orders dismissing this suit are reversed, and the case is remanded for trial.