Robert T. DAVIS, et al., Appellants,

v.

DUNCANVILLE INDEPENDENT SCHOOL DISTRICT, et al., Appellees.

No. 05–84–00920–CV.

Court of Appeals of Texas, Dallas.

Oct. 30, 1985.

Rehearing Denied Dec. 10, 1985.

**16**

B. Prater Monning, III, Gardere & Wynne, Dallas, for appellants.

Earl Luna, Law Offices of Earl Luna, P.C., Dallas, for appellees.

Before AKIN, GUILLOT and HOWELL, JJ.

AKIN, Justice.

Appellants, a number of taxpayers residing within the Duncanville Independent School District, appeal from an adverse judgment rendered in their suit against the Duncanville Independent School District for injunctive and declaratory relief. Appellants sought to prevent the District from building a natatorium financed by the sale of a portion of the bonds authorized by a 1978 bond election. On appeal they contend that the trial court erred in: (1) concluding that the District was not bound by

certain representations made to the public in connection with the bond election; and (2) concluding that the District did not act illegally in voting to use a portion of the bond proceeds to build a natatorium. We hold that the District was not bound by the representations in question because they were not formally adopted by the Board of Trustees [1] ("the Board") of the District as a body at a properly called meeting. We also hold that the District did not act illegally in voting to use bond proceeds to finance the construction of a natatorium. Accordingly, we affirm the judgment of the trial court.

The controversy in this case concerns a bond election held on May 23, 1978, and certain representations made by the superintendent of schools in connection with the election. At a properly called meeting on May 4, 1978, the Board adopted the following proposition:

Shall the Board of Trustees of said District be authorized to issue the bonds of the District, in one or more series, in the aggregate principal amount of $15,000,-000, for the purpose of the construction and equipment of school buildings in the District and the purchase of the necessary sites therefor, with said bonds to mature, bear interest, and be issued and sold in accordance with law; and shall the Board of Trustees be authorized to levy and pledge, and cause to be assessed and collected, annual ad valorum taxes, on all taxable property in the district, sufficient, without limit as to rate or amount, to pay the principal of and interest on said bonds?

This proposition was submitted to and approved by the voters. No other orders, statements, or representations concerning the bond election were adopted by the Board at a called meeting.

On May 3, 1978, the superintendent of schools met with several Duncanville business and civic leaders. The local press was also in attendance. The superintendent, Dr. Sam Thompson, informed those present that the Board would meet the following

1. The District is managed by its elected Board of Trustees.

day to officially call a bond election. Dr. Thompson explained that the bonds were needed to finance construction of new facilities required because of the District's anticipated rapid growth. Dr. Thompson used an overhead projector to display the District's projected student enrollment figures for the next several years. In the course of his presentation, Dr. Thompson stated that "[i]f the school does not grow in student population ... the bonds will not be sold." The anticipated growth in student enrollment has not occurred.[2]

Dr. Thompson subsequently repeated his presentation at a number of other community meetings. Additionally, a leaflet was distributed at these meetings and placed in the mail slots of Duncanville residents containing the same growth figures that Dr. Thompson displayed on the overhead projector. The leaflet specifically projected the District's need for four new elementary schools and one junior or senior high school, stating that 300,000 square feet of new classroom space would soon be needed. The leaflet bore the names of all Board members, and some of the Board members assisted in its distribution.

On May 14, 1984, the Board met and decided to use a portion of the bond proceeds to construct a natatorium on the campus of Duncanville High School. Appellants sued to enjoin construction of the natatorium. After trial to the court, judgment was rendered denying the relief sought.

■ On appeal, appellants first contend that the trial court erred in concluding that the District was not bound by the representations concerning the use of the bond proceeds that were made by Dr. Thompson and contained in the leaflet. We do not agree. The legislature has granted to the Board of Trustees of the District the exclusive power to manage and govern the schools within its jurisdiction. TEX.EDUC. CODE ANN. § 23.26(b) (Vernon 1972). It is a well-established rule in Texas that where the legislature has committed a matter to a political subdivision of the state, that subdivision may act only as a body corporate at a properly called meeting. *Webster v. Texas & Pacific Motor Transport Co.*, 140 Tex. 131, 166 S.W.2d 75, 76 (1942); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Thermo Products Co. v. Chilton Independent School District*, 647 S.W.2d 726, 732 (Tex.App.—Waco 1983, writ ref'd n.r.e.); *Toyah Independent School District v. Pecos-Barstow Independent School District*, 466 S.W.2d 377, 380 (Tex.Civ.App.—San Antonio 1971, no writ). This general rule applies to governing bodies of school districts. *Toyah*, 466 S.W.2d at 380.

■ Appellants concede that none of the representations at issue were adopted by the Board as a body at a called meeting. Appellants, however, point to the trial court's finding of fact that the Board was "aware of" the distribution of the leaflet and the presentations of Dr. Thompson and "acquiesced" in these actions. They argue that this knowledge and acquiescence makes the representations binding on the Board. We cannot agree. As our supreme court has stated:

> Consent or acquiescence of, or agreements by, the individual members acting separately and not as a body do not bind the board of the political subdivision which they represent, and all persons are chargeable with knowledge that such is the case.

*Webster*, 166 S.W.2d at 77. *See also Cook*, 656 S.W.2d at 657. Accordingly, we hold that the District was not bound by the representations at issue because they were not formally adopted by the Board as a body at a properly called meeting.

■ Appellants next contend that the trial court erred in concluding that the District did not act illegally in voting to use part of the bond proceeds to build a natato-

---

2. The District anticipated an increase of 4318 students from 1977–78 to 1984–85. The actual increase has been 561 students.

rium. We disagree. The bond proposition submitted to and approved by the voters authorized the sale of the bonds "for the purpose of the construction and equipment of school buildings in the District." The trial court found that the natatorium proposed by the Board is a "school building" within the meaning of the proposition submitted to the voters. Appellants have not challenged this finding on appeal. Accordingly, we hold that the trial court did not err in concluding that the District did not act illegally in voting to use bond proceeds to build a natatorium.

The judgment of the trial court is affirmed.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. The majority ignores a line of directly applicable cases. It chooses instead to base its decision upon authority that is both factually and legally dissimilar to the case at hand.

The situation before us is strikingly similar to that addressed by the Waco Court of Appeals in *Devorsky v. La Vega Independent School District,* 635 S.W.2d 904 (Tex. App.—Waco 1982, no writ). In his pleadings the plaintiff in *Devorsky* alleged that the District had ordered an election, and then, between the order and the election, made certain representations concerning the location of the proposed school. After the bond issue passed, the District elected to place the school at another location. The court held that the facts pleaded stated a cause of action where the representations misled the public as to the purpose of the funds. The court could enjoin the diversion of a bond issue to another purpose.

In *Inverness Forest Improvement District v. Hardy Street Investors,* 541 S.W.2d 454 (Tex.Civ.App.—Houston 1976), the District circulated a letter in connection with a forthcoming bond election. The court ruled that representations contained in the letter were binding on the district.

The voters of the district authorized such bonds to be issued in reliance on ... the directors' letter.·... The letter had the effect of representing and pledging to the voters that the judgment and discretion of the board had already been exercised by naming these particular projects to which part of the proceeds of these bonds would be appropriated. The directors of the district cannot arbitrarily ignore or repudiate their pledge.

*Id.* at 461.

The two cases stand for a clear proposition—if the governmental entity induces the voters to approve a bond issue by making certain representations about the issue, it is bound by those representations. If the entity cannot be held to its representations, a fraud may be perpetrated upon on the voters. *See Black v. Strength,* 112 Tex. 188, 246 S.W. 79, 80 (1922) ("With the bond issue authorized by votes cast in reliance on the order, as must be assumed, it could not be arbitrarily ignored or repudiated without involving the perpetration of fraud or its equivalent on the voters.")

The author recognizes that there is contrary language in *Nalle v. Austin* 85 Tex. 520, 544–45, 22 S.W. 668, 674–75 (1893), but does not believe the case to be presently authoritative. *Compare Black,* 246 S.W. at 80. In *Hudson v. San Antonio Independent School District,* 127 Tex. 517, 95 S.W.2d 673, (1936) the court refused to hold the district to an "official statement" placed in the minutes two days before the election. The decision distinguished *Black* on the basis that the representations before it were not widely known in the community. There is a clear inference that where the information is widely disseminated, the governing body cannot arbitrarily disregard its communication.

The case before us provides ample evidence of widespread dissemination. The superintendent gave repeated speeches on the proposed issue. He distributed a leaflet bearing his name and those of the entire Board. The leaflets were printed by the high school print shop. The superintendent and the Board president both testified that the membership of the Board was aware of the information being distributed by the

superintendent. The trial court found that it was the intention of the District that voters rely upon the information being distributed. We interpret this as a finding that a majority of the Board so intended. The trial court also found:

> The Board of Trustees of the Duncanville Independent School District were aware of the publicatin of the pamphlet and the communications of Dr. Thompson pertaining to the prospective use of bond proceeds prior to and during communication of the same to the voters, and acquiesced in the same.

The various communications all cited the projected growth of the district and the need for classroom facilities. The degree of official involvement in the messages was calculated to induce the voters to rely on the statements. To permit the District to disregard its pledge is to countenance a fraud on the voters.

The majority cites a line of cases announcing the principle that a governmental entity is bound only by an order or a resolution adopted at a properly convened meeting. We have no quarrel with this general proposition. The case before us, however, is both factually and legally dissimilar from the ones cited by the majority.

None of the majority's cases were in the bond election context. The court in *Devorsky* stated:

> [W]e have found no authority expressly holding that a statement to the voters designating a particular site to be purchased with the proceeds of a bond issue, made by a governing body with the power of site selection, under the circumstances and for the deliberate purpose and the effect alleged here by appellant, must be adopted at a meeting entered in the minutes of the governing body before it can officially become and be relied upon by the voters as part of the proposition submitted in the bond proposal.

635 S.W.2d at 909. A body of law has developed that expressly relates to circumstances like the one before us. We should consult that law to answer the questions presented by the case.

Certainly, it is the rule that a governmental body cannot be held to a contract unless the action is an "official" one, regularly enacted at a properly convened meeting. However, the voter reliance cases employ a theory akin to estoppel. Fraud or its equivalent may not be perpetrated upon the voters; the electorate may not be misled as to the intended purpose of the bond issue being voted upon.

In the case before us, the Board "acquiesced" in the making of specific representations as part of a program to convince the voters that the bonds should be approved. As a matter of good conscience, the Board cannot be permitted to substantially deviate from its representations without working a deception upon the voters. Consonant with the principles of estoppel, we should not require affirmative action by the District, official or otherwise; we can and should declare that which it may not do.

The purpose of the rule requiring that governmental actions be adopted at a duly convened meeting is the preservation of the deliberative process. Each member of the governing body is given an opportunity to contribute his "experience, counsel, and judgment." *Webster v. Texas & Pacific Motor Transport*, 140 Tex. 131, 166 S.W.2d 75, 77. The goal of judicious deliberation is in no way advanced by applying the rule to the situation before us. Indeed, in a situation where the officers of the District made public representations in a manner which implied that the District itself would stand by the representations, the orderly conduct of governmental affairs demands that the District be held to the statements. The policy of this state is clear:

> In the matter of bond issues authorized by the vote of the citizenship affected, in the submission of the proposition the law encourages rather than frowns upon, a full and definite statement of their purpose.

*Moore v. Coffman*, 109 Tex. 93, 200 S.W. 374 (1918). The majority's opinion tends to hinder rather than foster this policy. On the other hand, an injunction in this case

will be a very small incursion upon the powers of the Board to conduct school affairs according to its own best judgment. An injunction will not by any means prohibit the contruction of a natatorium. Other available funds may be employed; another bond issue may be proposed. What the District may not do is expend bond money contrary to its express representations to the voters.

I dissent. The case should be reversed and remanded with instructions to grant the injunction.