**Max E. HEISLER, Individually, and as Executor for the Estate of Florence L. Heisler, Appellee,**

v.

**Mayor C. W. "Bill" THOMAS, Christine Salmon, Walter Starks, Karl Oltmanns and Joe Alexander, Commissioners of the City of Stillwater, Oklahoma, a Municipal Corporation, Appellants.**

No. 55888.

Supreme Court of Oklahoma.

Sept. 28, 1982.

W. Keith Thomas, Stillwater, for appellee.

10. *City Nat. Bank & Trust Co. v. Owens, Okl.,* 565 P.2d 4 (1977).

John T. Severe, Stillwater, for appellants.

DOOLIN, Justice:

In late 1978, Appellee Max E. Heisler ("owner") prepared to sell two tracts of land in Stillwater. He believed the tracts to be zoned for multifamily residences, relying on a zoning map prepared by Appellant City of Stillwater ("the City"). Protests by neighboring landowners led to the discovery of a discrepancy in the zoning map: the property in question had originally been zoned for single family residences and had never been rezoned.

Owner then requested that the City's Board of Commissioners rezone the property to allow twice the number of dwelling units. Owner did not request that the property be rezoned for multifamily dwellings. Roughly 68% of the landowners within 300 feet of the property in question contested the rezoning. A number of those protesting the change were heard during two public hearings held by the Board of Commissioners. Owner's request for a zoning change was denied.

Owner brought suit in district court to permanently enjoin the City from prohibiting use of the property consistent with his requested zoning or, in the alternative, to mandatorily enjoin the City to rezone the property as requested. At trial, owner's witness, the Director of Housing and Community Development for the City, testified that the requested zoning was compatible with the zoning pattern of the area but that valid reasons existed for denying rezoning. Neighboring landowners, among them an engineer expert in flood control, testified on behalf of the City that the zoning change would result in increased traffic congestion, increased noise and enhanced flood danger.

The trial court found that development of the property would cause increased traffic problems and enhance the danger of flooding, but that the evidence did not establish that these dangers would be significantly increased by a change of zoning as compared to the original single family zoning. The court concluded the City had shown no good reason to deny the rezoning request and granted the injunction.

The City appeals from these findings.

It is well settled that the action of a municipality in enacting, amending or refusing to amend ordinance is a legislative function. *O'Rourke v. City of Tulsa*, 457 P.2d 782 (Okla.1969); *Cauvel v. City of Tulsa*, 368 P.2d 660 (Okla.1962); *Keaten v. Brown*, 171 Okla. 38, 45 P.2d 109 (1935). This legislative power arises by virtue of the authority of the Oklahoma Statutes, particularly 11 Okla.Stat. 1981, §§ 43–101, 43–103.[1] If the validity of a classification for zoning purposes is "fairly debatable," the legislative judgment of the municipality is controlling. *City of Oklahoma City v. Barclay*, 359 P.2d 237 (Okla.1960). A zoning classification is fairly debatable if reasonable men could differ as to whether it is reasonable. *Id.* 359 P.2d at 241. The role of the judiciary in reviewing a zoning classification is to determine whether it is unreasonable, arbitrary or an unconstitutionally unequal exercise of police power. *Botchlett v. City of Bethany*, 416 P.2d 613 (Okla. 1966).

The evidence presented at the hearing below clearly establishes either zoning classification would have been reasonable, given the zoning classification and actual use of the surrounding property. Flood and

---

1. 11 Okla.Stat. 1981, § 43–101 provides in pertinent part:

 "For the purpose of promoting health, safety, morals, or the general welfare of the community, a municipal governing body may regulate and restrict the ... density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

 Section 43–103 provides that the objectives to be advanced by zoning ordinances include

but are not limited to: (1) Lessening congestion in the streets, (2) securing safety from fire panic and other dangers, (3) promoting the general health and welfare and (4) preventing overcrowding of land and undue concentration of population.

 11 Okla.Stat. 1981, § 43–103: "The regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses ..." *Id.*

traffic control are legitimate concerns in determining the appropriate zoning classification. Testimony presented on behalf of the City (which is substantially the same as that presented at the rezoning hearings) links increased traffic congestion and enhanced flood danger to the estimated increase in population density under the proposed rezoning. There is nothing in the record to show that the action of the Board of Commissioners was arbitrary or an unequal exercise of police power.

We hold, therefore, that the Board of Commissioner's decision to retain the original zoning classification must control. The judgment of the trial court is reversed.

All the Justices concur.