2001 OK 78

Lee V. McGEE, an individual, surviving spouse, surviving next of kin of Devona A. "Dee" McGee, on behalf of himself and as father, and as next of kin and next friend, of Alexandria McGee, a minor child, Plaintiffs/Appellants,

v.

Neal E. ALEXANDER, Jr., an individual, Defendant and Hillcrest Health Center, Inc., an Oklahoma corporation, d/b/a Hillcrest Medical Center; and Hillcrest Golf & Country Club, Inc., d/b/a Willow Creek Golf and Country Club, and John Does, 1 through 9, Defendants/Appellees,

Glenda Mitchell Branch, as Widow and next of kin of Walter A. Branch, Plaintiff,

v.

Neal E. Alexander, Jr., Defendant.

Julian Branch, an individual, next of kin of Walter A. Branch, Plaintiff/Appellant,

v.

Neal E. Alexander, Jr., an individual, Defendant,

and

Hillcrest Health Center, Inc., an Oklahoma corporation, d/b/a Hillcrest Medical Center; and Hillcrest Golf & Country Club, Inc., d/b/a Willow Creek Golf and Country Club, Defendants/Appellees.

No. 94,931.

Supreme Court of Oklahoma.

Sept. 25, 2001.

Robert L. Rainey and James R. Martin Oklahoma City, for Lee V. McGee, Plaintiff/Appellant.

Michael P. Merchant and Michael D. Lewis Oklahoma City, for Julian Branch, Plaintiff/Appellant.

Amy E. Kempfert, Thomas A. LeBlanc and Matthew B. Free, Tulsa, for Hillcrest Health Center, Inc., Defendant/Appellee.

Tom L. King and Leslie Meek Wileman Tulsa, for Hillcrest Golf and Country Club, Inc., d/b/a Willow Creek Golf and Country Club, Defendant/Appellee.

BOUDREAU, J.

¶ 1 On June 20, 1997, Walter Branch and his adult daughter, Devona McGee, were killed by an intoxicated driver, Neal Alexander, Jr., while changing a tire along an Oklahoma City highway near the Willow Creek Golf and Country Club. As a result of the accident, the surviving spouses and next kin of Branch and McGee filed suit against the intoxicated driver, as well as Hillcrest Health Center, Inc. (Hillcrest) and Willow Creek Golf and Country Club (Willow Creek) under a dram shop liability theory.

¶ 2 Prior to the accident which killed Branch and McGee, Alexander attended a golf scramble fund raiser and end of year party in honor of the interns and residents at Hillcrest Health Center. Hillcrest raised funds to pay for the event and fund raiser by charging a $60 tournament fee and soliciting sponsors whose logos or names were then displayed at various points throughout the tournament. Alexander was the guest of a Hillcrest physician who paid Alexander's tournament fee.

¶ 3 Alexander arrived for the tournament around 11:00 a.m. and left the reception and

awards ceremony in the clubhouse sometime around 7:00 p.m. that evening. During those hours he consumed a number of beers.[1] Alexander indicated he consumed the majority of beer while on the golf course and acknowledged that he had too much to drink by the time he finished the 18th hole. Alexander apparently obtained two more beers in the clubhouse with drink coupons which were part of a hospitality package given to participants of the golf tournament.

¶ 4 Defendant, Hillcrest Health Center, supplied the beverages available on the course, which included beer as well as sodas and other non-alcoholic drinks. Hillcrest employees, including nurses, manned the beverage carts and served the drinks to the golfers from coolers. The beverage carts themselves were golf carts provided by Willow Creek for use in delivering drinks throughout the course. Willow Creek personnel were not involved in furnishing drinks to tournament participants on the golf course.

¶ 5 Willow Creek did staff the open bar at the clubhouse where the reception and awards ceremony took place at the conclusion of the tournament. While tournament participants could pay cash to purchase drinks at the bar, the club's records indicate no one paid, but instead patrons simply used their drink coupons. It was at this bar where Alexander traded in his two drink coupons for two beers toward the end of the evening. Willow Creek maintains that it has no record of who was working specifically at the clubhouse or the clubhouse bar on the evening of June 20, 1997 and can only provide a general list of who reported for work that evening.

¶ 6 Willow Creek has a valid mixed beverage license, allowing it to operate the bar at the clubhouse. On the evening of June 20th, it served 255 drinks to approximately 150 tournament patrons. Willow Creek billed Hillcrest approximately $858.70 for the bar

---

**1.** Alexander's sworn statement indicates that he consumed only beer on the day in question. The distinction between low point beer as a nonintoxicating liquor and other alcoholic beverages is not vital to the application of this opinion and words used in this opinion such as "liquor" and "alcohol" apply to both beer and other spirits.

services at the clubhouse reception.[2]  Willow Creek billed in excess of $14,000 for the entire event.

¶ 7 Alexander testified that he left the event between 6:45 and 7:00 p.m. Very shortly thereafter and within close proximity to the Willow Creek Golf Club, Alexander veered off the road and killed Branch and McGee who were changing a flat tire on the shoulder.  Alexander stated he made no stops after leaving the country club and consumed no alcohol other than that which he consumed at the country club.  Alexander was taken to the Hillcrest Hospital emergency room after the accident.  The police report indicates that the attending officers suspected Alexander was intoxicated and as a result left a blood alcohol test kit to be conducted at the hospital.  Testing revealed Alexander's blood alcohol level was .19, well above the legal limit for intoxication in Oklahoma.

¶ 8 Plaintiffs, the surviving spouses and next kin of the two victims, Branch and McGee, filed suit against Alexander, Hillcrest Health Center, Inc., Willow Creek Golf and Country Club and John Does 1 through 9 (who allegedly served the alcohol).  Seeking to impose dram shop liability upon Defendant, Hillcrest, Plaintiffs included an allegation that Hillcrest and Willow Creek were joint venturers in the vending of alcohol for the tournament.  Both Hillcrest and Willow Creek filed Motions for Summary Judgment. Hillcrest premised its summary judgment on a claimed status as a social host.  Willow Creek also argued that it occupied the status of a social host because it was an agent of a social host, Hillcrest.  In addition, Willow Creek argued that it did not know, nor have any reason to know Neal Alexander was intoxicated.

¶ 9 The trial court granted summary judgments in favor of both Hillcrest Health Center and Willow Creek Golf Club. Plaintiffs appealed to this Court.  The Court of Civil Appeals affirmed the summary judgments with regard to both Defendants.  This Court granted certiorari to examine whether the

record on summary judgment demonstrates that dram shop liability applied to neither Hillcrest Health Center nor Willow Creek. For the reasons set out herein, the opinion of the Court of Civil Appeals is vacated and the trial court's judgment is affirmed in part and reversed in part and remanded for further proceedings.  Specifically, the grant of summary judgment in favor of Hillcrest Health Center is affirmed, while the summary judgment in favor of Willow Creek Golf and Country Club is reversed.

## I.  STANDARD of REVIEW

¶ 10 Summary judgment is proper where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law.  *Daugherty v. Farmers Co-op. Ass'n,* 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie,* 1994 OK 3, ¶ 3, 867 P.2d 463, 464.  "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings."  *Wabaunsee v. Harris,* 1980 OK 52, ¶ 9, 610 P.2d 782, 785.  An order granting summary judgment disposes of legal issues.  As a result, on appeal, the appellate court's review is *de novo.*  *Brown v. Nicholson,* 1997 OK 32, ¶ 5 n. 1, 935 P.2d 319, 321 n. 1; *Manley v. Brown,* 1999 OK 79, 989 P.2d 448, 456 n. 30.

## II.  DRAM SHOP LIABILITY ASSERTED AGAINST HILLCREST HEALTH CENTER

### A.  Hillcrest is Not a Commercial Vendor of Alcohol

¶ 11 In *Brigance v. Velvet Dove Restaurant,* 1986 OK 41, 725 P.2d 300, 304, this Court rejected the common law rule of nonliability for tavern owners with respect to injured third parties, holding that "one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person."  *Brigance* clearly limit-

2.  The record indicates Willow Creek billed the Hillcrest tournament, including golf cart rentals, banquet facilities, liquor, food, green fees, etc., to

Willow Creek patron Ray Brazier who was affiliated with Hillcrest.  Hillcrest then covered the event through Mr. Brazier's bill.

ed the liability exception to commercial vendors of alcohol. *Id.*

¶ 12 Plaintiffs argue that the teachings of *Brigance* and its progeny should be extended under the unique facts of this case to make a non-commercial provider of alcoholic beverages liable to injured third parties for serving liquor to one who was then known, or should have been known, to be intoxicated. Plaintiffs concede that Hillcrest did not hold a license to sell alcoholic beverages, but argue Hillcrest engaged in an activity on the day in question that was business-related, as well as social. Plaintiffs point out that Hillcrest intended to apply funds in excess of tournament costs, including donations, to its continuing medical education program. Plaintiffs also stress that Hillcrest charged each participant $60.00 to defray the costs of the tournament, including the alcohol. In essence, Plaintiffs argue that by sponsoring the golf tournament and reception, Hillcrest engaged in an activity that was sufficiently business-related in nature that Hillcrest should be considered a commercial provider for purposes of dram shop liability.

¶ 13 In support of its argument that it is not a commercial provider, Hillcrest points out that it is a hospital which does not hold a license to sell alcoholic beverages of any kind nor does it have the concomitant right of profit from the sale of alcohol. In *Tomlinson v. Love's Country Stores, Inc.*, 1993 OK 83, 854 P.2d 910, 912, we acknowledged the profit potential for liquor vendors as one of the driving reasons for imposing dram shop liability against the commercial vendor of alcohol: "The Legislature has placed on every vendor who holds a license to furnish alcoholic beverages and a concomitant right of profit from its sale the responsibility to refrain from supplying those beverages to minors or to intoxicated persons." This Court made a similar acknowledgment in *Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326, 1331, "[t]he public regulates and licenses commercial vendors to sell and distribute alcohol for profit. The public has a right to demand that a commercial vendor act more prudently and with greater duty towards minors than is asked of a private person who hosts a party."

¶ 14 Although this Court has not directly addressed the issue of whether a non-commercial provider who has a business interest in furnishing alcoholic beverages to its guests loses its status as a social host, it has suggested that this is not the case. *See Kellogg v. Ohler*, 1992 OK 18, 825 P.2d 1346, 1348. Citing with approval *Solberg v. Johnson*, 306 Or. 484, 760 P.2d 867, 870 (1988), this Court defined a social host as "one who receives guests, whether friends or *associates*, in a social or *commercial setting*, in which the host serves or directs the serving of alcohol to guests." (citations omitted, emphasis added). This definition suggests that a non-commercial vendor does not lose its status as a social host simply because it receives its associates in a commercial setting.

¶ 15 In our view, if a distinction between a social host and a commercial provider is to be made, the basis for that distinction is whether the provider sells or intends to make a profit from the sale of alcohol. Our earlier dram shop cases have acknowledged the profit potential for liquor vendors as the substantial reason for imposing dram shop liability against the commercial vendor of alcohol. *Tomlinson v. Love's Country Stores, Inc.*, 854 P.2d 910; and *Busby v. Quail Creek Golf and Country Club*, 885 P.2d 1326. Other jurisdictions have also adopted this distinction, irrespective of how they ultimately decided the social host liability issue. *See Dickinson v. Edwards*, 105 Wash.2d 457, 716 P.2d 814, 830 (Wash.1986) (J. Durham dissenting). Accordingly, we view a business that sponsors an event for employees or associates as a social host, providing the business does not sell or intend to make a profit from the sale of alcohol.

¶ 16 Hillcrest undoubtedly furnished alcohol on the golf course on June 20, 1997. However, Hillcrest was not in the business of selling alcohol for profit. It did not hold a license to sell alcoholic beverages of any kind nor was it regulated by the state for that purpose. The fact that Hillcrest charged participants $60.00 to defray costs of the tournament does not make it a commercial provider of alcoholic beverages. *Koehnen v. Dufuor*, 590 N.W.2d 107 (Minn.1999) (host of party did not lose her status as social host

because she took money from guests to defray liquor costs); *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896 (1987) (employee association which had its members contribute to buy food and alcohol for a picnic did not become a commercial seller of alcohol within the meaning of the Dram Shop Act). Similarly, the possibility that its employees' morale may have been enhanced or that its continuing medical education program may have received some donations as a result of the tournament, does not place upon Hillcrest the duty of care the law imposes upon a commercial provider of alcohol. Hillcrest occupied the status of social host in sponsoring the tournament and reception.

¶ 17 In other jurisdictions where commercial vendor liability has been recognized, there has still been a reluctance on the part of the courts to expand the concept of commercial vendor, even where the setting is a commercial one. See, *Mulvihill v. Union Oil Co. of California*, 859 P.2d 1310 (Alaska 1993) (Company sponsored a Christmas party, court determined company was a social host and could not be held liable for injuries resulting from furnishing alcoholic beverages to intoxicated person later involved in accident); *Meany v. Newell*, 367 N.W.2d 472, 51 A.L.R.4th 1039 (Minn.1985) (employer held Christmas party, employee became intoxicated, court determined that because employer was not a commercial vendor of alcohol that the employer did not fall under dram shop act); *Johnston v. KFC Nat. Management Co.*, 71 Haw. 229 788 P.2d 159 (Hawaii 1990) (social host employer was considered a "non-commercial supplier of alcoholic beverages" and plaintiff could not establish a cause of action against social host defendant); *Whitney Crowne Corp. v. George Distributors, Inc.*, 950 S.W.2d 82 (Tex.App.1997) (awards banquet was in essence a social event). *But see Born v. Mayers*, 514 N.W.2d 687 (N.D. 1994) (North Dakota Supreme Court said

dram shop act creates cause of action against *any* person who knowingly provides alcoholic beverages ·to an obviously intoxicated person).

¶ 18 In the alternative, Plaintiffs contend that this Court should extend liability to Hillcrest as a social host under the unique facts of this case, again stressing the quasi-commercial nature of the Hillcrest tournament and Hillcrest's active role in serving drinks, including beer, on the golf course.[3] Plaintiffs argue that the traditional reasons for refusing to impute civil liability to the social host, i.e. the typical social host is less experienced than the commercial vendor in dealing with alcohol and may be less capable of bearing the costs of liability, are not present in this case.

¶ 19 However, the implications of social host liability are very wide sweeping and have the potential to effect every element of our population, while commercial vendor liability implicates those entities most directly benefitting from liquor sale and distribution. *See Reynolds v. Hicks*, 134 Wash.2d 491, 951 P.2d 761, 764 (Wash.1998). To extend liability to a social host under the facts of this case would be a sweeping and broad expansion of the exception to the rule of non-liability. Plaintiffs have failed to offer sufficient reasons in this case to consider such an expansion.[4]

**B. The Summary Judgment Record Demonstrates Hillcrest was not in a Joint Venture with Willow Creek**

■ ¶ 20 Plaintiffs next argue that Hillcrest entered into a joint venture agreement with Willow Creek, who Plaintiffs assert is a commercial vendor, and as a result Hillcrest is liable for Plaintiffs' injuries to the same extent as Willow Creek.

A joint venture has been defined in Oklahoma as a special combination of two or more persons where in some specific ven-

---

**3.** Plaintiffs do not ask the Court to adopt a blanket social host liability scheme.

**4.** Although not expressly urged in its petition for certiorari, Plaintiffs may have indirectly referenced two alternative theories of liability against Hillcrest: one, failure to exercise due care to secure a competent independent contractor for

the work and; two, hiring an independent contractor to perform a hazardous activity, ie. the on-premises sale of alcohol. Neither of these implied theories have support in the evidentiary material in the summary judgment record on appeal.

ture a profit is jointly sought without any partnership or corporate designation. Three elements are necessary to establish the existence of a joint venture: 1) A joint interest in property (the contributions need not be equal or of the same character), 2) An express or implied agreement to share profits and losses of the venture, 3) Action or conduct showing cooperation in the venture. *LeFlore v. Reflections of Tulsa,* 1985 OK 72, 708 P.2d 1068, 1072 (citations omitted).

¶ 21 The summary judgment record is devoid of any evidence indicating Hillcrest and Willow Creek shared an interest in any property. Plaintiffs attempt to circumvent this shortcoming by asserting that the joint enterprise itself is the shared interest. Plaintiffs' interpretation of the first requirement is too broad and would effectively eliminate it as an element of the joint venture test. *See Wickham v. Belveal,* 1963 OK 227, 386 P.2d 315 (defendant's agreement to furnish horses, feed and facilities, while plaintiff was to care for horses and keep records in return for half of colts born, did not rise to level of a "joint venture", it was more properly an employment contract involving an element of profit sharing). This Court is reluctant to find a "joint interest in property" wherever one party contracts for services with another.

¶ 22 Secondly, the uncontroverted facts demonstrate that there was no agreement that Hillcrest and Willow Creek would in some way share in the profits and losses of this tournament and reception. The billing records show Willow Creek provided and charged for services at a predetermined rate to be paid by Hillcrest.[5] Willow Creek charged Hillcrest for the lunch buffet on a per person basis and for the reception menu on a per tray basis. Willow Creek provided the open bar at the reception and awards ceremony and Hillcrest then compensated it for the drink tickets used by the Hillcrest guests at the club's bar service rate. There is simply nothing in the summary judgment record indicating Willow Creek was prepared to offer its services at a loss or reap additional profits depending on the success or lack

thereof of the Hillcrest event. The second element of joint venture is not present.

¶ 23 The absence of any one element is enough to defeat Plaintiffs' contentions of joint venture. Here, two elements are missing. The trial court correctly rejected Plaintiff's claims of joint venture.

## C. The Summary Judgment Record Demonstrates that Hillcrest's Actions Did Not Amount to Negligence Per Se Under 37 O.S. § 247

¶ 24 Plaintiffs urge that Hillcrest violated 37 O.S.1991 § 247 and that the violation amounted to negligence per se:

> No holder of a retail license or permit to sell low-point beer, or an employee or agent of a holder of such a license or permit, shall knowingly, willfully and wantonly sell, deliver or furnish low-point beer to an intoxicated person. Any person violating the provisions of this section shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a term of not more than six (6) months, or by both such fine and imprisonment. Such violation shall be additional grounds for revocation of any license or permit for the sale of low-point beer as and in the manner provided by law.

There are three elements required in order for a violation of a statute to rise to the level of negligence per se. *Boyles v. Oklahoma Natural Gas, Co.,* 1980 OK 163, 619 P.2d 613, 618. The party asserting negligence per se must establish that the injury complained of 1) was caused by the ordinance's violation, 2) was of the type intended to be prevented by the ordinance and 3) the injured party was one of the class meant to be protected by the ordinance. *Id.*

¶ 25 The first element requires Plaintiffs to establish that Hillcrest violated 37 O.S. § 247. Section 247 addresses the conduct of a "holder of a retail license or permit to sell low-point beer" or the employee or agent of a "holder of a retail license or permit to sell low-point beer". Hillcrest is not a "holder of

5. See supra note 2.

a retail license or permit to sell low-point beer". Additionally, Plaintiffs offered no evidentiary material to establish that disputed facts exist supporting their assertion that Hillcrest was an agent of Willow Creek, the "holder of a retail license or permit to sell low-point beer".

¶ 26 Because the statute does not apply to Hillcrest, Hillcrest did not violate it. The first element of negligence per se is missing. Accordingly, we need not address the remaining elements.

## III. DRAM SHOP LIABILITY ASSERTED AGAINST WILLOW CREEK GOLF AND COUNTRY CLUB.

### A. On the Day in Question Willow Creek Occupied the Status of a Commercial Vendor of Alcohol and Not the Status of an Agent of a Social Host .

¶ 27 Willow Creek asserts in its Motion for Summary Judgment that the uncontroverted facts of the case establish it is the agent of a social host, Hillcrest. Willow Creek argues that it is therefore entitled to the same insulation from liability to injured third parties that a social host enjoys. However, we find instead that the uncontroverted facts establish, as a matter of law, that Willow Creek occupied the status of a commercial vendor, not a social host with regard to its role in the Hillcrest golf tournament fund raiser.

¶ 28 These facts are as follows. First, Willow Creek was a licensed commercial vendor of alcohol, serving alcohol by virtue of its license on the evening of June 20, 1997. Secondly, the golf tournament participants could exchange their drink tickets at Willow Creek's clubhouse bar for any two drinks of the player's choosing. Third, by the terms of the banquet and function contract, Willow Creek charged Hillcrest for each coupon redeemed and was then reimbursed by Hillcrest for each drink provided. Willow Creek's invoice shows it served and charged Hillcrest for: 27 import beers, 8 wines, 71 house liquors, 131 premium liquors, and 18 domestic beers. Willow Creek charged Hillcrest $858.70 for the 255 drinks served as a result of redeemed tickets. Finally, Alexander ordered two beers at the Willow Creek clubhouse reception and "paid" for them by redeeming his two drink coupons.

¶ 29 An agency relationship generally exists if two parties agree one is to act for the other. *Garrison v. Bechtel Corp.,* 1995 OK 2, 889 P.2d 273. An essential element of an agency relationship is that the principal has some degree of control over the conduct and activities of the agent. *Id.* The uncontroverted facts do not establish either the necessary agreement or the requisite control over Willow Creek by Hillcrest. Willow Creek was simply hired by Hillcrest to provide a venue, food, alcohol and attendant services for Hillcrest's end of year party and fund raiser. This banquet and service contract between Hillcrest and Willow Creek does not rise to the level of agency.

¶ 30 Instead the uncontroverted facts clearly establish that on June 20, 1997, Willow Creek was a country club engaged in the commercial enterprise of selling and serving alcohol to commercial invitees. Serving alcohol as a licensed commercial vendor operated to Willow Creek's financial benefit, both assisting the club in attracting business, while at the same time providing income from the bar itself. This profit potential, available to liquor vendors, is a primary consideration in this Court's rationale for tavern owner dram shop liability. *See Tomlinson v. Love's Country Stores, Inc.,* 854 P.2d at 912; *Busby v. Quail Creek Golf and Country Club,* 885 P.2d at 1331.

¶ 31 Willow Creek proposes two primary arguments in support of its contention that it was simply an "independent purveyor of spirits" and "had no incentive to sell drinks and did not do so." First, Willow Creek stresses the attenuated process of the drink/ticket arrangement used at the clubhouse reception. We find this argument unavailing. The fact remains that Willow Creek charged Hillcrest for each drink ticket redeemed. Willow Creek received more money each time a Hillcrest guest consumed an alcoholic beverage. The drink/ticket arrangement provided Willow Creek with the profit potential available to any tavern owner.

¶ 32 Secondly, Willow Creek points out that Alexander was a guest who did not purchase his tournament entry fee or any of the alcoholic beverages he consumed at the tournament or reception. Willow Creek argues that this fact establishes that it sold no alcohol to Alexander. We find this argument equally unavailing. The fact remains that Hillcrest owed more money to Willow Creek each time a ticket was redeemed, including Alexander's two tickets, making the ticket for drink trade a sale for all practical purposes. Furthermore, Willow Creek's emphasis on the "sale" of alcohol is misplaced. A vendor of alcohol has an obligation not to "sell, deliver or *furnish*" liquor (or in this case low-point beer) to a noticeably intoxicated person by virtue of 37 O.S.1991 § 247 (emphasis added). The statute does not absolve the vendor of this obligation because another customer "paid for the round". Under Willow Creek's analysis, the vendor could continue to over-serve a noticeably intoxicated person as long as the tab was being picked up by someone else. We decline to accept Willow Creek's argument with regard to either the attenuated payment process set up for the bar or the fact Alexander himself did not pay for his drinks.

### B. A Material Question of Fact Exists with Regard to Alexander's Noticeable Intoxication

¶ 33 In its further defense, Willow Creek asserts the uncontroverted facts establish that Willow Creek and its personnel had no knowledge, nor any reason to know, Alexander was visibly or noticeably intoxicated. In *Brigance* we held . . .

> [T]hat one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person. It is not unreasonable to expect a commercial vendor who sells alcoholic beverages for on the premises consumption to a person he knows or should know from the circumstances is already intoxicated, to foresee the unreasonable risk of harm to others who may be injured by such person's impaired ability to operate an automobile. *Brigance*, 725 P.2d at 304.

¶ 34 Circumstantial evidence can be used to establish whether the vendor knew or should have known of the inebriate's visible or noticeable intoxication. *Copeland v. Tela Corp.*, 1999 OK 81, 996 P.2d 931, 933 (plaintiff was entitled to use inference and circumstantial evidence to prove during trial that drunk driver was noticeably intoxicated when he was served at defendant's tavern). The summary judgment record indicates both parties rely on circumstantial evidence to support their contentions regarding whether Alexander was noticeably intoxicated at the time he was served at the reception.

¶ 35 Contrary to Willow Creek's assertion, the facts regarding whether Willow Creek or any of its workers knew or should have known Alexander was intoxicated are far from uncontroverted. While Willow Creek provided evidentiary material to support its own assertions, the summary judgment record also includes evidentiary material provided by Plaintiffs which dispute Willow Creeks' asserted facts. The record contains evidence describing a loud argument between Alexander and another tournament participant on the course. In addition, the police noted Alexander's slurred speech, his inability to walk and the fact he failed field sobriety tests given him immediately after the accident, which occurred shortly after Alexander left the reception. In fact, the police were so concerned about Alexander's state that they left a blood alcohol testing kit at the hospital, which ultimately revealed Alexander's .19 blood alcohol level. At best, the evidence with regard to Alexander's noticeable intoxication is conflicting, making it an inappropriate basis upon which to rest a summary judgment.

### IV. CONCLUSION

¶ 36 Despite Plaintiffs' contentions, the summary judgment record demonstrates that Hillcrest Health Center was not a commercial vendor of alcohol while hosting its June 20, 1997 golf tournament and fund raiser. In addition, the record does not support Plaintiffs' contentions that Hillcrest and Willow Creek Golf Club were engaged in a joint venture or that Hillcrest was negligent per

se. We hold the trial court correctly granted summary judgment in favor of Hillcrest.

¶ 37 We find the record does support Plaintiffs' assertions that Willow Creek Golf Club was a commercial vendor of alcohol, selling liquor to Hillcrest employees and associates, on June 20, 1997. Furthermore, we find the record contains disputed issues of material fact with regard to Neal Alexander's noticeable intoxication. We hold that the trial court erroneously granted Willow Creek's Motion for Summary Judgment.

¶ 38 The opinion of the Court of Civil Appeals is vacated and the trial court's judgment is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

¶ 39 CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; DECISION OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED WITH DIRECTIONS TO PROCEED IN A MANNER CONSISTENT WITH THIS OPINION.

¶ 40 HARGRAVE, C.J., HODGES, LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU, and WINCHESTER, J.J. Concur. WATT, V.C.J. Concurs in Part and Dissents in Part.