Dear Senator Wilson:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May the governing body of a city, by legislative action, amend the city's excise (sales) tax ordinance for the purpose of tourism development, approved by city voters at an election called for that purpose, to provide that the funds collected go to a service provider other than the entity designated in the ballot or must the amendment be submitted to a vote of the people?
The question as stated by you relates to a municipal excise (sales) tax ordinance adopted by a particular city in Oklahoma where the proceeds are to be used for tourism development, and services to promote tourism are to be provided to the city by a specific nonprofit corporation pursuant to a contract.
At various times municipalities in Oklahoma have approved local sales tax issues, the proceeds of which are designated for economic or tourism development. In many instances a local private organization is designated to accomplish the economic or tourism development goals, pursuant to a contract. In some instances, the ordinance providing the purpose of the tax will also specify the organization (such as a chamber of commerce or other private entity) that will serve as the city's agent in the endeavor, but in other instances the mechanism for accomplishing the economic or tourism development goal (such as specifying an agent with which the city will contract) is left to the discretion of the municipal governing board. It is in the context of the first hypothetical, i.e., where the ballot proposition authorizing the tax approved by voters specifies the agent with which the city will contract that your question is presented.
You ask whether the ordinance may be amended to substitute a different service provider without a vote of the people, where the rate and purpose of the tax will remain unchanged. This office does not render opinions on particular municipal ordinances since municipalities are not state agencies and further because analysis of specific ordinances involves questions of fact that the Attorney General cannot address. See
74 O.S. 2001, § 18b[74-18b](A)(5). We will endeavor, however, to provide general guidance to municipalities on State law requirements when taxing ordinances are proposed to be amended.
 PURPOSE
Oklahoma Constitution Article X, Section 19 provides:
 Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.
Id. This constitutional provision serves to prevent "concealment of the purpose of a tax levy and to prohibit the improper use of a fund after it has already been pledged for the payment of a certain obligation." Black v. Okla. Funding BondComm'n, 140 P.2d 740, 743 (Okla. 1943). If a change in the use of sales tax proceeds is proposed, such change must be approved by voters. A.G. Opin. 04-32, at 215-16, 217.
The word "purpose" is not defined in the Constitution or in State statutes. The common definition of "purpose" is "an object to be attained: an end or aim to be kept in view in any plan, measure, exertion, or operation[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1847 (3d ed. 1993). However, the term "purpose" is broadly used and is not synonymous with "project." A.G. Opin. 04-32, at 213. A term in a statute must not be so technically construed to defeat the intent of the legislation or result in absurd consequences. See Bd. of Educ. v. Allen,156 P.2d 596, 599 (Okla. 1945).
Assuming the tax rate and the end purpose for which the tax proceeds are to be used, i.e., tourism development, as provided in the voter-approved ordinance is not changed, is there a legal impediment to the governing body of the city changing the entity providing the service, where such entity was specifically named in the election proposition? In other words, may the service provider specified in the ballot be changed, so long as the overall purpose and rate of the tax is maintained?
 ROLE OF THE SERVICE PROVIDER
For purposes of analysis, we must assume the purpose of the tourism sales tax ordinance is to raise money for tourism development in the city. It cannot be a proper purpose to raise money for a private entity, acting as service provider, for such devotion of public money to a private enterprise by a municipality is prohibited by the Constitution in Article X, Section 17. Ordinances will be construed, wherever possible, to uphold the presumption of validity and constitutionality of such legislation. Norman Homeowners Ass'n v. City of Norman,85 P.3d 853, 857-58 (Okla.Ct.App. 2003). With such a construction upholding fulfillment of a public purpose, i.e., tourism development and assuming the contract imposes appropriate governmental controls, such ordinance may be lawful and consistent with constitutional requirements. See Way v. GrandLake Ass'n, 635 P.2d 1010, 1018 (Okla. 1981); Orthopedic Hosp.v. Okla. State Dep't of Health, 118 P.3d 216, 221
(Okla.Ct.App. 2005).
Where a tourism sales tax ordinance is enacted by a municipality's governing body and approved by voters, with such ordinance (1) authorizing a tax at a specified rate, (2) with the proceeds thereof dedicated to tourism development and (3) authorizing a private entity to provide the tourism development services to the municipality pursuant to a contract, an agency relationship must of necessity be created. An agency relationship exists where one party agrees to act on behalf of or for the benefit of the other. McGee v. Alexander, 37 P.3d 800, 807
(Okla. 2001). "An essential element of an agency relationship is that the principal has some degree of control over the conduct and activities of the agent." Id. Under principles announced inWay, the municipality must exercise supervision and control over the use of its sales tax proceeds to avoid an unconstitutional gift to the private provider. Way,635 P.2d at 1018.
Under principles of agency law, the municipality must have an element of control over the actions of the private agent.McGee, 37 P.3d at 807. The governing body of the municipality must be able to direct how the purposes of the taxing ordinance are achieved, and therefore, must retain the ability to appoint or remove its agent, or alter its activities. Id. A principal may revoke an agent's authority at any time, unless such agency includes a power coupled with an interest. McKellop v. Dewitz,140 P. 1161, 1163 (Okla. 1914); Wickham v. Belveal,386 P.2d 315, 318 (Okla. 1963).
Where the authority given an agent is coupled with an interest or estate in the subject matter of the agency, the principal has no power to revoke the agency without the agent's consent. Coxv. Freeman, 227 P.2d 670, 679 (Okla. 1951). For example, if a principal conveys to his or her agent by deed an interest in the oil, gas and other minerals under specified lands, and also directs the agent to bring suit to quiet title to such minerals, such an agreement creates a "power coupled with an interest" which may not be revoked without the agent's consent. Id.
(citation omitted). But again, no such power coupled with an interest can result here, because of the requirement of Way for adequate (and continuing) governmental controls over the use of the tax money by a private entity.
Thus, we conclude that a contract between a municipality and a private agent does not create a "power coupled with an interest," and the contract may therefore be terminated by the municipality without the private agent's consent under general agency law. But are there other restrictions on the municipal governing body's ability to amend such an ordinance?
 AMENDMENT
Section 2701 of Title 68, which generally authorizes cities and towns to impose and levy municipal sales taxes, provides in pertinent part as follows:
 A. Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government except ad valorem property taxes.
 . . . .
 B. A sales tax authorized in subsection A of this section may be levied for limited purposes specified in the ordinance levying the tax. Such ordinance shall be submitted to the voters for approval as provided in Section 2705 of this title. . . . Such ordinance shall describe with specificity the projects or expenditures for which the limited-purpose tax levy would be made. . . . Money in the limited-purpose tax fund shall be expended only as accumulated and only for the purposes specifically described in the taxing ordinance as approved by the voters.
Id. (emphasis added).
Thus, the purpose of, or use to which municipal sales tax proceeds will be put, must be specifically described as required by State statutes, local ordinances, and where applicable, municipal charter provisions. A.G. Opin. 03-6, at 29, 30.
Whether a particular municipal sales tax ordinance specifically provides the manner and extent to which the ordinance may be amended (keeping the rate and use of the tax unchanged), either by the governing body or by voters, must be determined on a case-by-case basis. Such detailed analysis of particular municipal ordinances is not a proper subject for an Attorney General's Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
 DISCRETION OF A MUNICIPAL GOVERNING BODY IN ADMINISTERING A SALES TAX FOR A SPECIFIED PURPOSE
Assuming a municipal sales tax ordinance grants some power to the municipal governing body to make administrative changes in the ordinance to accomplish its intended purpose, such a provision would indicate the governing body has discretionary power in administering the disbursement of the sales tax proceeds. The goal of the ordinance used as an example herein is to provide funding for tourism development. The precise mechanism of accomplishing this goal is left, at least to an extent, to the discretion and watchcare of the municipal governing body.
A municipal governing body (i.e., town board, city council or city commission as the case may be) as the legislative body of the municipality, is ultimately responsible for the municipality's fiscal policy. State ex rel. Brown v. City ofWarr Acres, 946 P.2d 1140, 1144 (Okla. 1997).
This does not mean the governing body may ignore the mention of a particular service provider in the ballot proposition, but we believe a municipal governing body must exercise sound discretion in monitoring the performance of the private provider. Thus, the municipal governing body is not only empowered, but required to act in a legislative capacity. If a choice or legislative decision made by the governing body is fairly debatable and is not arbitrary or capricious, its legislative judgment will not be disturbed. Heisler v. Thomas, 651 P.2d 1330, 1331 (Okla. 1982);State ex rel. Brown, 946 P.2d at 1145.
"When voters approve [the] use of taxes for a public project, any major deviation to the project is not within the government's lawful power; while minor details in a public project may be changed by the governing [body], taxpayer funds may not be used to construct a substantially different project than the one approved by voters." 15 McQuillin Municipal Corporations § 40.20 (Thomson et al. eds., 3d ed. 2005) (footnote omitted).
Distinguishing a "minor" detail in a project from a "major" one can sometimes be difficult. Likewise, it may be hard to discern the amount of discretion a municipal governing body is authorized to exercise in the enabling ordinance approved by voters.
In Sane Transit v. Sound Transit, 85 P.3d 346 (Wash. 2004), the Washington Supreme Court, in a 6-3 decision, held that where voters in the Seattle-Tacoma area voted to approve increases in local sales and motor vehicle excise taxes to construct a 21-mile light rail line and other public transportation improvements over a 10-year period, the transportation authority administering the plan properly exercised its discretionary authority in scaling the project back from a 21-mile line to a 14-mile line and extending the completion time of the project. Id. at 357. While recognizing the change in plans amounted to a substantial deviation from the proposition presented in the ballot, the underlying ordinance approving the project and levying the taxes was found by the majority to vest discretionary powers in the authority where unanticipated changes in conditions occurred.Id. A sharply worded dissent voiced opposition to allowing a project to be built that was significantly different than the one approved by voters. Id. 367-68 (Sanders, J., dissenting). The decision in Sane Transit points out the importance of determining what discretion, if any, may be exercised by the municipal governing body under the enabling ordinance, when due to ballot length restrictions the entire ordinance cannot be summarized in a relatively few words, but the enabling ordinance is incorporated by reference. Id. at 353-55.
A case where the reviewing court took the opposite approach, i.e., prohibiting a change in the tax-funded project not approved by voters is Devorsky v. La Vega Independent School District,635 S.W.2d 904 (Tex.Ct.App. 1982). There, the Texas Court of Appeals held that where voters approved bonds relying on a prior pledge of the school board that the proceeds would be used for a school at a particular location, but the ballot only authorized "purchase of the necessary sites" and did not specify the location, the governing body must not arbitrarily ignore or repudiate the prior pledge. Id. at 905, 907. Thus, the trial court's order dismissing the suit brought by a taxpayer was reversed, and the matter was remanded for trial. Id. at 910. A distinguishing factor between Devorsky and Sane Transit is that in Devorsky, the plaintiff alleged the defendant school board acted arbitrarily in changing the school location and the school board chose to defend the suit on other grounds, namely the plaintiff's failure to sue within a 30-day protest period and his lack of capacity to sue because, at the time of the suit, he did not own property subject to school taxes. Id. at 907. The Texas Court of Appeals did not specifically discuss the issue of arbitrary action by the school board, but merely remanded the case for trial to determine whether an injunction should issue.Id. at 910.
In the present instance, while the overall purpose of the tax, i.e., tourism development, cannot be changed, nor can there be a change in the rate of the tax, a change in the mechanism by which the purpose is accomplished may be authorized, depending on the exact language of the particular ordinance. For example, if a municipal governing body were to determine misfeasance or malfeasance on the part of the private service provider, we believe the governing body would be well justified in amending or replacing the contract, either to correct abuses by the present provider, or to name a new service provider. Otherwise, the will of the people to provide money for tourism development could be completely thwarted. We conclude such a change would be permissible, provided the discretion of the governing body is exercised in a sound and non-arbitrary manner. But in instances where the ordinance specifies that the provider can only be a particular entity (such as a local chamber of commerce), and prohibits the municipality's governing body from changing the provider without voter approval, then presentation of this issue to voters would be required. Whether such voter approval is mandated will depend on the particular ordinance and its wording.
 CONCLUSION
A municipal governing body may determine to remove a particular private service provider as a contracting party or amend the terms of the contract and adopt an amended ordinance calling for an alternative means of accomplishing the goal of tourism development (such as utilizing a contract with another agent), so long as the decision is based on articulable standards and is not arbitrary. Such a decision would not, in our opinion, require a vote of the people to approve an amended ordinance where the rate of the tax is not changed, nor is there any change in the purpose for the use of the tax, unless the language of the ordinance is very specific so as to require a particular service provider to the exclusion of all others. This fact question cannot be addressed in an Attorney General's Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. A municipal ordinance approved by voters imposing a sales tax specifying that the proceeds of such tax are to be used for tourism development and further specifying that the tax be appropriated to a specific private service provider such as a chamber of commerce, under a contract, may be amended by the city council to provide for a different provider without a vote of the people where the ordinance authorizes the governing body to administer the tax and make necessary administrative and technical changes, so long as: (1) the rate of the tax and the purpose of the tax, i.e., tourism development, remains unchanged, (2) the action of the council is based on articulable standards and is not arbitrary, and (3) there is no language in the ordinance specifically excluding other service providers without a vote of the people. 68 O.S. Supp. 2005, § 2701[68-2701]; State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997); Heisler v. Thomas, 651 P.2d 1330, 1331 (Okla. 1982).
 2. Whether a particular municipal sales tax ordinance for tourism development or other specified purpose specifically requires that only one private service provider may be used to provide tourism development services and excludes the possibility of other service providers without a vote of the people involves questions of fact, which cannot be addressed in an Attorney General's Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
LYNN C. ROGERS ASSISTANT ATTORNEY GENERAL