## HARRINGTON v. THOMAS. (No. 2081.)

Court of Civil Appeals of Texas. El Paso.
Dec. 8, 1927.

Rehearing Denied Jan. 5, 1928.

**I. Brokers ⬤═65(4)—Agent cannot receive commissions from buyer and seller without knowledge and consent of both.**

Agent cannot act for buyer and seller and receive commissions from both without their knowledge and consent.

**2. Brokers ⬤═66—Evidence held not to show contractual relation between broker authorized to sell and broker negotiating trade, entitling former to recover commissions on property exchanged.**

Evidence *held* not to show contractual relation between broker authorized to sell real estate and broker negotiating trade therefor, so as to entitle former to recover commissions from latter on property exchanged.

Appeal from Dallas County Court, at Law; Paine L. Bush, Judge.

Suit by Chapman Thomas against P. B. Harrington. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Thomas & Storey and Burgess, Owsley, Storey & Stewart, all of Dallas, for appellant.

Thompson, Knight, Baker & Harris and J. H. Ranson, all of Dallas, for appellee.

WALTHALL, J. Appellee brought this suit against appellant to recover the sum of $262.50, alleged to be due as commissions on the sale of certain real estate exchanged or traded in on a purchase of real estate in Dallas county.

The case was tried without a jury. After hearing the evidence, the court entered judgment for appellee for the amount sued for with interest. The trial court made no finding of fact.

A brief statement of the material evidence offered on the trial follows: Appellee, the only witness who testified, said: He had resided in Dallas for 40 years and had been in the real estate business there for the past 6 or 7 years. In the late spring of 1924, H. E. Grossman (owner of the property) of Dallas, listed with witness for sale about 80 acres of land (describing same). Witness did not have exclusive agency from Grossman on the sale of this property. Witness called appellant over the phone and told him about the tract of land for sale. Appellant said to witness he would like to see the property. Appellee and appellant went in appellant's car to see the land, and appellee told appellant what the price was; did not tell appellant who the owner was. Appellant said to appellee that he was interested in buying an acreage tract for himself and his associates. Appellant did not state names of his asso-

ciates. Appellee knew that appellant was himself in the real estate business, but appellant did not intimate that he was acting in the capacity of a real estate broker, but was acting as a prospective purchaser. After looking over the tract of land in discussing its use and price, they returned to appellant's car. While in appellant's car, appellant asked appellee if appellee's party would take some trade-in, and stated that, if he would do so he (appellant) would probably do business with appellee. Appellee told appellant that he thought it could be arranged for some trade if trade was put in a reasonable figure, and that appellee believed his people would accept a substantial trade-in if the trade-in was worth the money. Appellant then said to appellee: "All right, I will take *it up with my associates and show them the* land, and we will make you a proposition." Later appellee got appellant over the telephone and at that time appellant said he was not then ready to make a proposition, and that his associates made some objections to the land. Appellee did not see appellant any more until after the trade was made, some three or four weeks afterwards. Appellee learned that the trade was closed by seeing the transfer reported in the newspaper. Appellee then looked up the deed record and learned therefrom that the trade was made on exactly the basis appellee proposed to appellant, and that appellant had traded in property valued at $10,500.

Appellee further testified:

"There is a well-established custom among real estate brokers in Dallas, under which the purchaser of real estate, trading in property, is required to pay a commission to the real estate broker of 2½ per cent. of the trade-in value of the property traded in. All real estate men in Dallas are familiar with this custom, and Mr. Harrington is as familiar with it."

The witness further testified:

"The commission which was due me from Grossman was reduced by the commission which was due me from Harrington, which was 2½ per cent. of the value of the property traded in by Harrington. In this trade $34,500 worth of property changed hands, but the total commission on the whole trade amounted only to 5 per cent. on $24,000, leaving no commission paid on the trade-in property. Of this, under the custom I mentioned, Harrington should pay 2½ per cent. on $10,500. He has never paid this."

On cross-examination appellee testified that he sued Grossman for commission due on the $24,000 and the petition handed witness was the one he filed in the suit and made an exhibit. Appellee compromised his suit with Grossman; Grossman paying appellee $500, "which I received in full settlement of all matters involved in the suit." Witness had no writing from Harrington giving him the

agency to sell the traded-in property, and nothing was said by Harrington to witness as to payment of commission. The exhibit referred to shows a suit by appellee against Grossman for a commission of $1,200 on a sale of the property to Harrington at the price of $24,000; the commission claimed being 5 per cent. on that amount of the purchase price.

Appellant under several propositions insists, in effect, that (1) the sale of his property to Grossman, though by way of exchange, constitutes a separate and independent transaction from Grossman's sale, and the right of appellee to commission is the same as the right of an agent for a commission from the purchaser (that is, the right is contractual), and, where there is no contract to pay a commission, no commission is due; (2) appellee, representing Grossman, is not entitled to a commission on appellant's exchange property in the absence of a contract, express or implied; (3) a local custom among real estate agents to charge and receive from the purchaser a commission of 2½ per cent. of the value of exchanged property is not binding on the purchaser in the absence of an agreement by the purchaser to be bound; (4) custom cannot create a contract where, without it, none exists; (5) a real estate agent cannot represent both vendor and purchaser without the knowledge and consent of both, and a recovery of the one bars a right of recovery from the other under a plea of res adjudicata; (6) such agent undertaking to represent the vendor and purchaser is guilty of a dual agency and can recover from neither unless such representation was known and assented to by both vendor and purchaser.

Appellee alleged, and the evidence discloses, that Grossman employed appellee to sell the Grossman property as a real estate agent at the fixed price of $24,000. Appellee testified that the total commission on the whole trade amounted to only 5 per cent. on the $24,000. There is no intimation in the evidence that Grossman said anything to appellee about taking a part of the consideration in exchanged property, or that Grossman knew anything about the custom that prevailed among real estate dealers in Dallas under which the purchaser of real estate trading in property being required to pay a commission to the real estate agent on the value of the property traded in so as to charge Grossman with notice or knowledge of the custom and that by reason of the custom appellee would be the agent of Harrington as to the traded-in property.

[1] The evidence does not show that Grossman was a real estate agent. It is well settled that a person cannot act in the capacity of agent for both buyer and seller, and receive commissions from both without the knowledge and consent of both the buyer and seller, and from principles of public policy such agent would not be allowed to recover commission from either party unless he should so act with full knowledge and consent of both principals, and about this there is a conflict of authority. Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 269; Buck v. Woodson (Tex. Civ. App.) 209 S. W. 244, and cases cited. If Grossman had no knowledge of the custom among real estate agents, and did not otherwise give his consent that appellee might act for appellant in the matter of the traded-in property, the principle or rule invoked by appellee would seem to have no application.

[2] Omitting the custom pleaded by appellee, as we must, the evidence does not show a contractual relation between appellant and appellee by any terms of which appellant agreed to pay a commission of any amount on the exchanged property. Should we consider appellee as a middleman, a go-between as to the buyer and seller, as suggested by appellee, still there is no evidence that appellant agreed to pay a commission on the traded-in property or that appellee in any way represented appellant in effecting the trade with the exchange of property as a part of the consideration. We concur in appellant's insistence that as to him the evidence shows no contractual relation with appellee.

Aside from what has been said above, the evidence shows that appellee sued Grossman for the commission of $1,200, 5 per cent. on the $24,000. Appellee testified that he "compromised with Mr. Grossman for $500 in cash, which I received in full settlement of all matters involved in said suit." The evidence does not show that the suit resulted in a judgment in favor of appellee for the compromised amount, and for that reason the plea of res adjudicata might not be a complete bar as pleaded by appellant.

Without discussing each of the several propositions, we have concluded that the record before us does not show that appellee has a cause of action against appellant, and for that reason the cause is reversed, and judgment here rendered for appellant.

Reversed and rendered.