ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

October 31, 2006

The Honorable David A. Castillo
52nd Judicial District Attorney
Post Office Box 919
Gatesville, Texas 76528-0919

Opinion No. GA-0481

Re: Whether a city may use the proceeds of certificates of obligation for a water system improvement project that is different from the one contemplated when the certificates were issued (RQ-0483-GA)

Dear Mr. Castillo:

You ask whether the City of Copperas Cove (the "City") may issue certificates of obligation for a water system improvement project "based on a study done before issuance of the [certificates], then have a second study done and use the proceeds . . . for the second study project instead of the first study project[.]"[1] You inform us that the City requested a study on the repairs required for its water system and issued the certificates of obligation to pay for the recommended repair work. *See* Request Letter, *supra* note 1, at 1. After issuance of the certificates but before commencement of the repair work, the City directed a second study on the water system, which recommended repairs different from those in the first study. *See id.* The City determined to use the certificate proceeds for the second study repairs. *See id.* Some City residents question the City's authority to use the certificate proceeds for the second study repairs. *See id.* We understand your concern to be with the use of the certificate proceeds for the second study repairs rather than with the city's authority to obtain a second study in the first place. *See id.* at 1–2.

Certificates of obligation are securities and one method to finance public projects authorized by subchapter C, chapter 271 of the Local Government Code, the Certificate of Obligation Act of 1971 (the "Act"). *See* TEX. LOC. GOV'T CODE ANN. § 271.053 (Vernon 2005) (stating that certificates of obligation are "debts of the issuer" within the meaning of the Texas Constitution and when delivered constitute "securities" and "general obligations" under financing statutes); *Lee v. Comm'rs Ct. of Jefferson County*, 81 F. Supp. 2d 712, 713 (E.D. Tex. 2000), *aff'd*, 252 F.3d 434 (5th Cir. 2001) (stating that the Act was adopted to provide an alternate procedure for cities and counties to finance public works and related projects). The Act authorizes a city to issue certificates of

---

[1]Letter from Honorable David A. Castillo, 52nd Judicial District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Apr. 26, 2006) (on file with the Opinion Committee, *also available at* www.oag.state.tx.us) [hereinafter Request Letter].

obligation to pay contractual obligations for authorized public works and projects. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.043(7), .045(a) (Vernon 2005). The certificates are authorized by an ordinance adopted by a city's governing body. *See id.* § 271.047. Before issuing the certificates, with exceptions not applicable here, a city must publish a notice of its intention to do so at least fourteen days before the date set for adopting the certificate ordinance. *See id.* § 271.049(a), (d). The notice must state the date set for adopting the certificate ordinance, the maximum amount and purpose of the certificates, and whether the certificates will be paid with taxes, revenues, or a combination of taxes and revenues. *See id.* § 271.049(b). If before the date set for adopting the certificate ordinance, the city receives a petition signed by at least five percent of the qualified voters, then the city must order and hold an election and obtain the voters' approval to issue the certificates. *See id.* § 271.049(c). If no such petition is filed, then the city is authorized to issue the certificates without conducting an election. *See id.*

Like other public securities, "[t]he proceeds [of the certificates] may be used only for the purposes for which the certificates were authorized and issued." *Id.* § 271.050(b); *see also Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) ("It is elementary that the proceeds of bonds voted by the people must be expended for the purposes for which they were voted.") (quoting *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)). Your question requires us to determine the purposes for which the particular City certificates in question were authorized and issued.

Based on the formal authorizing documents, the particular certificates were issued for water and wastewater system improvements. As required by the Act, the City published notice of its intent to issue the Combination Tax and Revenue Certificates of Obligation, Series 2001 (the "Certificates"), which we understand you to ask about, and adopted an ordinance authorizing the issuance and sale of the Certificates. *See* PUBLISHER'S AFFIDAVIT, KILLEEN DAILY HERALD (June 18, 2001) & NOTICE (published June 8 & 15, 2001) [hereinafter the Notice]; COPPERAS COVE, TEX., ORDINANCE 2001-27 RELATING TO $8,400,000 CITY OF COPPERAS COVE, TEXAS COMBINATION TAX AND REVENUE CERTIFICATES OF OBLIGATION, SERIES 2001, at 1 (adopted June 28, 2001) [hereinafter the Certificate Ordinance].[2] The Notice and the Certificate Ordinance state that the Certificates are issued, in part,[3] to pay for "improvements to the City water and wastewater system." Notice; Certificate Ordinance at 6. Neither document specifies particular improvements or references a study or plan. Thus, pursuant to the authorizing documents required by the Act, the Certificates were issued for water and wastewater system improvements, and the proceeds may be used for any such improvements. *See* TEX. LOC. GOV'T CODE ANN. § 271.050(b) (Vernon 2005) (stating that proceeds may be used only for the purpose for which the certificates were issued); *see*

---

[2] *See also* Letter from W. Glenn Opel, Vinson & Elkins, to Honorable Greg Abbott, Attorney General of Texas, at 1 (May 25, 2006) (on file with the Opinion Committee) [hereinafter Bond Counsel Letter].

[3] The Certificates were issued to also pay for the cost of municipal court, animal control, park, and public works facility improvements; construction and improvement of a fire station; acquisition of firefighting equipment and vehicles; construction of road and street improvements; acquisition of road construction equipment; construction of communication facilities and acquisition of communication and computer equipment; and related professional and issuance costs. *See* Notice; Certificate Ordinance at 6.

*also Barrington*, 338 S.W.2d at 143 (holding that voters' approval of generally worded bond proposition gave governing body discretion to use the bond proceeds for a particular project within the proposition's broad scope); *Fletcher v. Ely*, 53 S.W.2d 817, 818 (Tex. Civ. App.—Amarillo 1932, writ ref'd) ("[I]n the absence of a definite identification of the specific road to be paved, a discretion exists in the commissioners' court as to which of two or more routes may be followed between control points named in the pre-election orders, which discretion . . . is surrendered when in response to a referendum . . . the particular route and road to be paved is identified and named.").

Given the broad scope of the authorizing documents' language, any limits on the use of the proceeds must necessarily derive from representations outside these formal actions of the City. In the context of voter-approved bonds, there is conflicting case law regarding whether representations of an issuer's governing body outside the formal election orders and resolutions on which the voters may have relied in approving the bonds may bind the issuer to use the bond proceeds consistent with such representations. *Compare Devorsky v. La Vega Indep. Sch. Dist.*, 635 S.W.2d 904, 908 (Tex. App.—Waco 1982, no writ) (holding that statements of school representatives regarding specific building sites made before a bond election bound the school district notwithstanding that it was not a "formal" action), *and Inverness Forest Improvement Dist. v. Hardy St. Investors*, 541 S.W.2d 454, 460 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (holding that a letter reflecting water district improvements had the effect of pledging to voters that those improvements would be made with bond proceeds), *with Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670, 675–76 (Tex. App.—Dallas 2002, pet. denied) (holding that issuing city "is not bound by any representations made in the pamphlet or other document [outside election orders and resolutions]").

Moreover, no court has required adherence to informal representations in the context of certificates of obligation issued without an election. It cannot be said that the voters relied on such informal representations regarding the use of the proceeds to *vote for* the certificates. Under the Act, while a city is required to publish the notice of intent prior to adopting the authorizing ordinance, an election is required only if a qualifying petition is received. *See* TEX. LOC. GOV'T CODE ANN. § 271.049 (Vernon 2005). Because no petition was filed, no election was required or held, and the City residents did not affirmatively vote to approve the Certificates. *See* Certificate Ordinance at 1 (reciting that "no petition of any kind has been filed with the City Secretary, any member of the City Council or any other official of the City, protesting the issuance of such certificates of obligation"). To enforce the City's informal representations then, one would presumably need to show that such representations influenced the *absence* of a petition for election by a sufficient percentage of the qualified voters.

But even assuming that the common law recognizes the binding effect of informal representations and that such common law construct applies to certificates of obligation issued without an election, we could not determine whether the use of the Certificate proceeds has been limited. Whether any limiting representations were made and whether the City residents may have relied on these representations in not submitting a petition for an election on the Certificates are disputed questions of fact. The City authorized issuance and sale of the Certificates in June 2001. *See* Certificate Ordinance. You state that the Certificates were issued based on the repairs recommended by the first study and suggest that the proceeds were intended at that time to be used

for those repairs. *See* Request Letter, *supra* note 1, at 1–2. The City's bond counsel, however, states that the Certificates were not issued based on an individual study and that the City Council did not represent to the public that the Certificate proceeds would be used for specific projects. *See* Bond Counsel Letter, *supra* note 2, at 1–2, 5. Such factual disputes cannot be resolved in the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that attorney general opinions do not determine questions of fact).

In answer to your question, we conclude that the City may use the proceeds of the Certificates for "improvements to the City water and wastewater system" including any such improvements recommended by the second study. We cannot determine whether use of the certificate proceeds may have been limited to particular improvements based on representations of the City outside the formal authorizing documents.

## S U M M A R Y

     The City of Copperas Cove (the "City") may use the proceeds of $8,400,000 Combination Tax and Revenue Certificates of Obligation, Series 2001, formally issued for "improvements to the City water and wastewater system" for any such improvements. Although representations of an issuer's governing body outside the formal authorizing documents may limit the use of proceeds in certain circumstances, an attorney general opinion cannot determine whether the proceeds of any particular securities have been so limited.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee